# Exhibit I

# AMERICAN MOMENTUM BANK

| ACH ORIGINATION AGREEMENT | Master Agreement |
|---|---|

This agreement is made this the __10th__ day of __March__ , 2021__ between: **American Momentum Bank** ("Financial Institution") and _The Center for Special Needs Trust Administration Inc.__ (the "Customer").

Customer wishes to initiate credit and/or debit Entries through the Financial Institution to accounts maintained at Financial Institution and in other depository financial institutions by means of the Automated Clearing House Network ("ACH") pursuant to the terms of this Agreement and the rules of the National Automated Clearing House Association ("NACHA") and Financial Institution's operating rules and procedures for electronic entries, including any exhibits or appendices thereto now in effect, or as may be amended from time to time, (the "Rules"), and Financial Institution is willing to act as an Originating Depository Financial Institution ("ODFI") with respect to such Entries. This Agreement sets forth the terms and conditions pursuant to which Financial Institution will provide to Customer the ACH Services outlined herein ("Services"). Customer hereby requests Financial Institution to provide the Service described in this Agreement. By executing this Agreement and/or using the Services described in this Agreement, Customer accepts and agrees to all terms, conditions, and provisions of this Agreement and agrees that this Agreement sets forth the terms and conditions pursuant to which Financial Institution will provide to Customer the Service outlined herein. To the extent that Customer transmits Entries via the Internet, Customer must execute the Internet Banking System agreement which is hereby incorporated by reference and made a part hereof. In the event of inconsistency between a provision of this Agreement, the Uniform Commercial Code ("UCC"), the Internet Banking System agreement, and/or the Depository Agreement, the provisions of this Agreement shall prevail. Terms not otherwise defined in this Agreement shall have the meaning ascribed to those terms in the Rules. The term "Entry" shall have the meaning provided in the Rules and shall also mean the data received from Customer hereunder from which Financial Institution initiates each Entry.

Therefore, in consideration of the mutual promises contained herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Financial Institution and Customer, intending to be legally bound, do hereby agree as follows:

## AGREEMENT

1.      **COMPLIANCE WITH RULES AND LAWS.** Customer acknowledges it has a copy or has access to a copy of the Rules. The Rules may also be purchased online at www.nacha.org under the publications tab. Customer agrees to comply with and be subject to the Rules of NACHA in existence at the date of this Agreement, and any amendments to these Rules made from time to time. It shall be the responsibility of the Customer that the origination of ACH transactions complies with U.S. law, including but is not limited to sanctions enforced by the Office of Foreign Assets Control ("OFAC"). It shall further be the responsibility of the Customer to obtain information regarding such OFAC enforced sanctions. (This information may be obtained directly from the OFAC Compliance Hotline at 800-540-OFAC or from the OFAC's home page site at www.ustreas.gov/ofac.) Customer agrees that the performance of any action by Financial Institution to debit or credit an account or transfer funds otherwise required by the Rules is excused from the performance of such action to the extent that the action is inconsistent with United States law, including the obligations of the Financial Institution under OFAC or any program administered by the United States Department of the Treasury's Financial Crimes Enforcement Network ("FinCEN"). Customer agrees generally and warrants to Financial Institution that all actions by Customer contemplated by this Agreement, including the preparation, transmittal, and settlement of Entries and payment orders, shall comply in all material respects with United States laws, regulations, regulatory guidelines and guidance, and official commentaries, including without limitation all such regulations, guidelines, and commentaries issued by the Board of Governors of the Federal Reserve and the Federal Financial Institutions Examination Council ("FFIEC"). Financial Institution will charge the Customer with any fines or penalties imposed by OFAC, NACHA or any organization which are incurred as a result of non-compliance by the Customer and the Customer agrees to fully reimburse and/or indemnify Financial Institution for such charges or fines. The specific duties of the Customer provided in the following paragraphs of this Agreement in no way limit the foregoing undertaking. The duties of the Customer set forth in the following paragraphs of this Agreement in no way limit the requirement of complying with the Rules.

Austin_Colby00151743

2.     **UNDERWRITING.** Customer approval for use of this Service may be subject to underwriting criteria established by Financial Institution from time to time.  If Financial Institution requires application of underwriting criteria to Customer approval for use of this Service, Financial Institution will communicate to Customer the nature and content of that criteria and the information Customer will be required to provide to Financial Institution.  Customer agrees to provide Financial Institution such financial, business and operating information as Financial Institution may reasonably request in connection with Financial Institution's underwriting and approval process.  Financial Institution may require the personal guarantee of a principal or an owner of company.  **Schedule H** should be executed if such a guarantee is required.

3.     **SECURITY INTEREST.**  To secure the payment and performance of Customer's obligations set forth herein, Customer grants to Financial Institution a security interest in and pledges and assigns to Financial Institution all of Customer's right, title, and interest in the following described property, whether now owned or hereafter existing or acquired and wherever located:  (a) all monies, instruments, savings, checking and other accounts of Customer (excluding IRA, Keogh, trust accounts and other accounts subject to tax penalties if so assigned) that are now or in the future in Financial Institution's custody or control;  (b) any other collateral described in any security instrument securing the obligations of Customer to Financial Institution under this Agreement or any other obligation of Customer to Financial Institution; and (c) all proceeds and products of the property as well as any replacements, accessions, substitutions, and additions to any of the above.

4.     **DESIGNATION OF ADMINISTRATOR.**  In order to originate ACH Entries, Customer must designate at least one Administrator. Administrator(s) shall be responsible for designating "Users" who Customer authorizes to issue Entries on its behalf.  For the purposes of this Agreement, the term User shall also include the Administrator.  The Financial Institution shall be entitled to rely on the designations made by the Customer's Administrator(s) and shall not be responsible for matching the names of the company Users designated by the Administrator(s) to names or titles listed in Customer's banking resolutions. Customer agrees that any such online Entries shall comply with Financial Institution's Security Procedures, which are subject to change without notice to Customer.  Although Financial Institution is only required to act upon the instructions of the User(s), the Financial Institution may, in its sole discretion, execute debit or credit Entries initiated by any individuals authorized by Customer to sign checks on Customer accounts. The signature cards establishing the authorized signatories for Customer deposit accounts are hereby incorporated by reference and made a part hereof.

5.     **TRANSMISSION OF ENTRIES BY CUSTOMER.** User(s) shall initiate the debit or credit Entries in **Schedule A** hereunder on behalf of and selected by Customer.  Financial Institution shall be entitled to deem any person having knowledge of any Security Procedure, defined below in Section 8 of this Agreement and required to initiate Entries under this Agreement, to be a User. User(s) shall transmit Entries to Financial Institution in computer readable form in compliance with the formatting and other requirements set forth in the NACHA file specifications or as otherwise specified by Financial Institution.  Entries shall be transmitted to Financial Institution no later than the time and the number of days prior to the Effective Entry Date specified in the Processing Schedule attached hereto and made a part hereof as **Schedule B**.  For the purposes of this Agreement, "Business Day" means Monday through Friday, excluding federal holidays and the "Settlement Date" with respect to any Entry shall be the Business Day when such Entry is debited or credited in accordance with instructions of the Customer. A federal holiday calendar is attached as **Schedule G.**  Entries received after the cut off time shall be deemed to have been received on the next Business Day. The total dollar amount of Entries transmitted by Customer to Financial Institution on any one Business Day shall not exceed the lesser of the amount of collected funds in Customer's account or the ACH Processing Limit set forth as part of this Agreement.

"*Entry Settlement Limit*" means the maximum aggregate amount of In-Process Entries permitted to be outstanding at any time, which amount shall be separately communicated to Customer by Financial Institution in writing from time to time.

"*In-Process Entries*" means the aggregate dollar amount of all credit or debit Entries initiated by Customer and in process on any date for which settlement has not occurred with respect to credit Entries, or the applicable period for the return of items has not expired with respect to debit Entries.

"*Overlimit Entry*" means an Entry the amount of which would cause the aggregate amount of In-Process Entries to exceed the Entry Settlement Limit.  Customer agrees that Financial Institution will not process an Overlimit Entry.  Financial Institution will suspend any Overlimit Entry submitted by Customer and may, following its receipt of an Overlimit Entry; suspend all In-Process Entries.  Customer acknowledges that any Overlimit Entry or other In-Process Entries suspended by Financial Institution will not settle on their scheduled Settlement Date.  If Customer wishes to initiate an Entry that would cause the amount of In-Process Entries to exceed the Entry Settlement Limit, Customer may submit to Financial Institution its request to initiate an Entry that otherwise would be an Overlimit Entry.  Customer must submit its request at least 2 banking days prior to the date on which Customer wishes to initiate the Entry that otherwise would be an Overlimit Entry.  Financial Institution may require from Customer financial or other information in connection with Financial Institution's consideration of the request. Financial Institution may grant or deny Customer's request at its sole discretion.  In addition to the foregoing, Financial Institution generally reserves the right to limit the nature and amount of the preauthorized debit/credit Entries processed under this Agreement or to refuse to process any debit/credit Entries under this Agreement if, in Financial Institution's sole judgment (i) there is reasonable cause to believe that any Entry will be returned or will not settle in the ordinary course of the transaction for any reason, (ii) to do otherwise would violate any limit set by the applicable clearing house association or any governmental authority or agency to control payment system risk, or (iii) a preauthorized credit Entry or the return of a

Page 2 of 17

Austin_Colby00151744

preauthorized debit Entry would create an overdraft of Customer's Accounts. If any of the foregoing actions are taken by Financial Institution with respect to a particular preauthorized debit/credit Entry, Financial Institution will notify Customer as promptly as practicable, but in no event later than 2 banking days after its decision. Customer may not reinitiate entries except as prescribed by the Rules.

6.   **THIRD PARTY SERVICE PROVIDERS.**   Customer may be using special equipment, services or software provided by a third party to assist it in processing Files hereunder ("Service Provider"). Customer agrees not to use a Service Provider to transmit files to Financial Institution without first entering into Financial Institution's Third Party Service Provider Agreement. If Customer uses Service Provider to transmit Files to Financial Institution and Customer and Service Provider have not entered into a Third Party Service Provider Agreement, Customer (a) agrees that Service Provider is acting as Customer's agent in the delivery of Files to Financial Institution, and (b) agrees to assume full responsibility and liability for any failure of Service Provider to comply with the laws of the United States, the Rules and this Agreement. Financial Institution will not be liable for any losses or additional costs incurred by Customer as a result of any error by Service Provider or a malfunction of equipment provided by Service Provider. Customer is solely responsible for maintaining compliance with the requirements of Service Provider, including obtaining any software updates. Financial Institution's sole responsibility shall be to transmit Financial Institution approved transactions to the ACH Operator and Financial Institution shall not have any responsibility for any File handled by Service Provider until that point in time when Financial Institution accepts and approves a File from such Service Provider for processing. If Financial Institution authorizes Customer to use a Service Provider, the terms and conditions governing the relationship between Customer and the Service Provider shall be governed by a separate agreement between Customer and Service Provider ("Service Provider Agreement"). All of Customer's obligations and responsibilities under this Agreement will apply to the Service Provider, and Customer's separate agreement with the Service Provider must so provide. At Financial Institution's request, Customer will provide to Financial Institution a true and exact copy of such agreement. Customer shall designate the Service Provider as a User and the Service Provider must also enter into a Service Provider Agreement before the Service Provider sends Files to Financial Institution. Notwithstanding the foregoing, Customer hereby authorizes Financial Institution to accept any File submitted by the Service Provider even if the Service Provider has not been designated as a User or if the Third Party Service Provider has not executed the Service Provider agreement. Customer hereby indemnifies and holds Financial Institution harmless for any losses, damages, fines, assessments, costs and expenses incurred or suffered by Financial Institution or any other person as a result of or arising from Customer's use of Service Provider, including fines or assessments incurred under or pursuant to the Rules and attorneys' fees.

7.   **SECURITY PROCEDURES.**

(a)   The Customer shall comply with the "Security Procedures" described in **Schedule C** attached hereto and made a part hereof, and Customer acknowledges and agrees that the Security Procedures, including (without limitation) any code, password, personal identification number, user identification technology, token, certificate, or other element, means, or method of authentication or identification used in connection with a Security Procedure ("Security Devices") used in connection therewith, constitute commercially reasonable security procedures under applicable law for the initiation of ACH entries. Customer authorizes Financial Institution to follow any and all instructions entered and transactions initiated using applicable Security Procedures unless and until Customer has notified Financial Institution, according to notification procedures prescribed by Financial Institution, that the Security Procedures or any Security Device has been stolen, compromised, or otherwise become known to persons other than User(s) and until Financial Institution has had a reasonable opportunity to act upon such notice. Customer agrees that the initiation of a transaction using applicable Security Procedures constitutes sufficient authorization for Financial Institution to execute such transaction notwithstanding any particular signature requirements identified on any signature card or other documents relating to Customer's deposit account maintained with Financial Institution, and Customer agrees and intends that the submission of transaction orders and instructions using the Security Procedures shall be considered the same as Customer's written signature in authorizing Financial Institution to execute such transaction. Customer acknowledges and agrees that Customer shall be bound by any and all Entries initiated through the use of such Security Procedures, whether authorized or unauthorized, and by any and all transactions and activity otherwise initiated by User(s), to the fullest extent allowed by law. Customer further acknowledges and agrees that the Security Procedures are not designed to detect error in the transmission or content of communications or Entries initiated by Customer and that Customer bears the sole responsibility for detecting and preventing such error.

(b)   Customer agrees to keep all Security Procedures and Security Devices protected, secure, and strictly confidential and to provide or make available the same only to User(s). Customer agrees to instruct each User not to disclose or provide any Security Procedures or Security Devices to any unauthorized person. Financial Institution shall distribute Security Devices to the Administrator and Financial Institution shall otherwise communicate with the Administrator regarding Security Procedures. Customer's Administrator shall have responsibility to distribute Security Devices to User(s) and to ensure the proper implementation and use of the Security Procedures by User(s). Where Customer has the ability to change or modify a Security Device from time to time (e.g., a password or PIN), Customer agrees to change Security Devices frequently in order to ensure the security of the Security Device. Customer agrees to notify Financial Institution immediately, according to notification procedures prescribed by Financial Institution, if Customer believes that any Security Procedures or Security Device has been stolen, compromised, or otherwise become known to persons other than User(s) or if Customer believes that any ACH transaction or activity is unauthorized or in error. In the event of any actual or threatened breach of security,

Austin_Colby00151745

Financial Institution may issue Customer a new Security Device or establish new Security Procedures as soon as reasonably practicable, but Financial Institution shall not be liable to Customer or any third party for any delay in taking such actions.

(c)      Customer agrees to notify Financial Institution immediately, according to notification procedures prescribed by Financial Institution, if the authority of any Administrator(s) shall change or be revoked. Customer shall recover and return to Financial Institution any Security Devices in the possession of any User(s) whose authority to have the Security Device has been revoked.

(d)      Financial Institution reserves the right to modify, amend, supplement, or cancel any or all Security Procedures, and/or to cancel or replace any Security Device, at any time and from time to time in Financial Institution's discretion. Financial Institution will endeavor to give Customer reasonable notice of any change in Security Procedures; provided that Financial Institution may make any change in Security Procedures without advance notice to Customer if Financial Institution, in its judgment and discretion, believes such change to be necessary or desirable to protect the security of Financial Institution's systems and assets. Customer's implementation and use of any changed Security Procedures after any change in Security Procedures shall constitute Customer's agreement to the change and Customer's agreement that the applicable Security Procedures, as changed, are commercially reasonable and adequate for the purposes intended.

## 8.     PHYSICAL AND ELECTRONIC SECURITY.

(a)      Customer is solely responsible for providing for and maintaining the physical, electronic, procedural, administrative, and technical security of data and systems in Customer's possession or under Customer's control. Without limiting the generality of the foregoing, Customer specifically acknowledges and agrees that as part of the foregoing obligation Customer shall comply with the provisions of Section 1.6 of the Rules, entitled "Security Requirements," for the safeguarding of Protected Information, as that term is defined in the Rules. Financial Institution is not responsible for any computer viruses (including, without limitation, programs commonly referred to as "malware," "keystroke loggers," and/or "spyware"), problems or malfunctions resulting from any computer viruses, or any related problems that may be associated with the use of an online system or any ACH Origination services. Any material downloaded or otherwise obtained is obtained at Customer's own discretion and risk, and Financial Institution is not responsible for any damage to Customer's computer or operating systems or for loss of data that results from the download of any such material, whether due to any computer virus or otherwise. Customer is solely responsible for maintaining and applying anti-virus software, security patches, firewalls, and other security measures with respect to Customer's operating systems, and for protecting, securing, and backing up any data and information stored in or on Customer's operating systems. Financial Institution is not responsible for any errors or failures resulting from defects in or malfunctions of any software installed on Customer's operating systems or accessed through an Internet connection.

(b)      Customer acknowledges and agrees that it is Customer's responsibility to protect itself and to be vigilant against e-mail fraud and other internet frauds and schemes (including, without limitation, fraud commonly referred to as "phishing" and "pharming"). Customer agrees to educate User(s), agents, and employees as to the risks of such fraud and to train such persons to avoid such risks. Customer acknowledges that Financial Institution will never contact Customer by e-mail in order to ask for or to verify Account numbers, Security Devices, or any sensitive or confidential information. In the event Customer receives an e-mail or other electronic communication that Customer believes, or has reason to believe, is fraudulent, Customer agrees that neither Customer nor its User(s), agents, and employees shall respond to the e-mail, provide any information to the e-mail sender, click on any links in the e-mail, or otherwise comply with any instructions in the e-mail. Customer agrees that Financial Institution is not responsible for any losses, injuries, or harm incurred by Customer as a result of any electronic, e-mail, or Internet fraud.

(c)      In the event of a breach of the Security Procedure, Customer agrees to assist Financial Institution in determining the manner and source of the breach. Such assistance shall include, but shall not be limited to, providing Financial Institution or Financial Institution's agent access to Customer's hard drive, storage media and devices, systems and any other equipment or device that was used in breach of the Security Procedure. Customer further agrees to provide to Financial Institution any analysis of such equipment, device, or software or any report of such analysis performed by Customer, Customer's agents, law enforcement agencies, or any other third party. Failure of Customer to assist Financial Institution shall be an admission by Customer that the breach of the Security Procedure was caused by a person who obtained access to transmitting facilities of Customer or who obtained information facilitating the breach of the Security Procedure from Customer and not from a source controlled by Financial Institution.

## 9.     CREDIT AND DEBIT ENTRIES; RECORDS RETENTION. 
Customer shall obtain an authorization ("Authorization Agreement") as required by the Rules from the person or entity whose account will be debited or credited as the result of a debit or credit Entry initiated by Customer and Customer shall retain the Authorization Agreement in original form while it is in effect and the original or a copy of each authorization for two (2) years after termination or revocation of such authorization as stated in the Rules. Upon request, Customer shall furnish the original or a copy of the authorization to any affected Participating Depository Financial Institution, as defined in the Rules.

The following table shows the proper SEC Codes to use depending on how you obtained the authorization to debit/credit an individual or company's account:

Austin_Colby00151746

| SEC Code | Debit / Credit | Authorization Method |
|---|---|---|
| PPD | Debit or Credit | Document signed by individual or similarly authenticated |
| CCD, CTX | Debit or Credit | Document signed or similarly authenticated by Customer* |

\* *All transactions from a business account must be CCD. Please see the CCD and definition in Schedule A or refer to the NACHA Rules for a detailed explanation.*

**10.   RECORDING AND USE OF COMMUNICATIONS.** Customer and Financial Institution agree that all telephone conversations or data transmissions between them or their agents made in connection with this Agreement may be electronically recorded and retained by either party by use of any reasonable means. Financial Institution shall not be obligated to make such recordings.

**11.   PROCESSING, TRANSMITTAL, AND SETTLEMENT BY FINANCIAL INSTITUTION.** Except as otherwise provided for in this Agreement and if Financial Institution elects to accept Entries, Financial Institution shall:

(a)   (i) use commercially reasonable efforts to comply with the instructions of Customer, (ii) process Entries received from Customer to conform with the file specifications set forth in the Rules, (iii) transmit such Entries as an ODFI to the "ACH" processor selected by Financial Institution, (iv) settle for such Entries as provided in the Rules, and (v) in the case of a credit Entry received for credit to an account with Financial Institution ("On-Us Entry"), Financial Institution shall credit the Receiver's account in the amount of such credit Entry on the Effective Entry Date contained in such credit Entry provided such credit Entry is received by Financial Institution at the time and in the form prescribed by Financial Institution in Section 5.

(b)   transmit such Entries to the ACH processor by the deposit deadline of the ACH processor, provided: (i) such Entries are completely received by Financial Institution's cut-off time at the location specified by Financial Institution to Customer from time to time; (ii) the Effective Entry Date satisfies the criteria provided by Financial Institution to Customer; and (iii) the ACH processor is open for business on such Business Day. Customer agrees that the ACH processor selected by Financial Institution shall be considered to have been selected by and designated by Customer. The Customer will receive immediately available funds for any electronic debit entry initiated by it on the Settlement Date applicable thereto.

**12.   SETTLEMENT OF CREDIT ENTRIES AND RETURNED DEBIT ENTRIES.** Customer agrees to settle for all credit Entries issued by Customer, User(s), or credit Entries otherwise made effective against Customer. Customer shall make settlement at such time on the date of transmittal by Financial Institution of such credit Entries as Financial Institution, in its discretion, may determine, and the amount of each On-Us Entry at such time on the Effective Date of such credit Entry as Financial Institution, in its discretion, may determine. Customer shall settle with Financial Institution for the amount of each debit Entry returned by a Receiving Depository Financial Institution ("RDFI") or debit Entry dishonored by Financial Institution. Settlement shall be made by Customer to Financial Institution in any manner specified by Financial Institution. Notwithstanding the foregoing, Financial Institution is hereby authorized to charge the account(s) ("Authorized Account(s)") designated in **Schedules E & F**, as settlement for credit Entries issued by Customer or returned or dishonored debit Entries. If Financial Institution requires pre-funding, Customer shall maintain sufficient collected funds in the Authorized Account(s) to settle for the credit Entries at the time the credit Entries are issued by Customer. In the event the Authorized Account or any other Customer bank account does not have collected funds sufficient on the Settlement Date to cover the total amount of all Entries to be paid on such Settlement Date, Financial Institution may take any of the following actions:

(a) Refuse to process all Entries, in which event Financial Institution shall return the data relating to such credit Entries to Customer, whereupon Financial Institution shall have no liability to Customer or to any third party as a result thereof; or

(b) Process that portion of the credit Entries as Customer has sufficient available funds in the Authorized Account to cover, in whatever order Financial Institution in its sole discretion shall elect to process, in which event Financial Institution shall return the data relating to such credit Entries as are not processed to Customer, whereupon Financial Institution shall have no liability to Customer or any third party as a result thereof; or

(c) Process all credit Entries. In the event Financial Institution elects to process credit Entries initiated by Customer and Customer has not maintained sufficient available funds in the Authorized Account with Financial Institution to cover them, the total amount of the insufficiency advanced by Financial Institution on behalf of Customer shall be immediately due and payable by Customer to Financial Institution without any further demand from Financial Institution. If Financial Institution elects to pay Customer's account in the overdraft on any one or more occasions, it shall not be considered a waiver of Financial Institution's rights to refuse to do so at any other time nor shall it be an agreement by Financial Institution to pay other items in the overdraft.

Austin_Colby00151747

**13. PRE-FUNDING.** Financial Institution reserves the right to require Customer to pre-fund an Account maintained at Financial Institution prior to the Settlement Date of the ACH file. Financial Institution shall determine whether pre-funding is required based on criteria established from time to time by Financial Institution. Financial Institution will communicate directly to Customer if pre-funding is required and, if requested by Customer, will provide Customer with an explanation of its pre-funding criteria. If it is determined that pre-funding is required, Customer will provide immediately available and collected funds sufficient to pay all Entries initiated by Customer (a) not later than 8:00 a.m. Eastern Standard Time two (2) days before each Settlement Date, and (b) prior to initiating any Entries for which pre-funding is required.

**14. ON-US ENTRIES.** Except as provided in Section 16, Rejection of Entries, or in the case of an Entry received for credit to an account maintained with Financial Institution (an "On-Us Entry"), the Financial Institution shall credit the Receiver's account in the amount of such Entry on the Effective Entry Date contained in such Entry, provided the requirements set forth in Section 11 (b) (i), (ii), and (iii) are met. If any of those requirements are not met, the Financial Institution shall use reasonable efforts to credit the Receiver's account in the amount of such Entry no later than the next Business Day following such Effective Entry Date.

**15. RESERVES.** From time to time, Financial Institution shall evaluate Customer's transaction activity for the purpose of establishing averages for transaction frequency, amount, returns and adjustments. These evaluations will occur at least annually and may occur more frequently at Financial Institution's discretion. In connection with these evaluations, Financial Institution reserves the right to require Customer to establish reserves with Financial Institution calculated by Financial Institution to cover Customer's obligations to Financial Institution arising from ACH activities under this Agreement. Reserves may be expressed as a fixed dollar amount or as a "rolling reserve" calculated based on "rolling" averages determined by Financial Institution's periodic evaluations. The amount of reserves required by Financial Institution, if any, will be communicated directly to Customer from time to time. Customer agrees to establish reserves as required by Financial Institution within two (2) banking days after receipt of a communication from Financial Institution setting forth the amount of required reserves and the basis of calculation used to determine the amount of reserves. Financial Institution may suspend ACH processing activity for Customer if Customer fails to establish the required amount of reserves within the time period specified by Financial Institution in its communication to Customer.

**16. REJECTION OF ENTRIES.** Customer agrees that Financial Institution has no obligation to accept Entries and therefore may reject any Entry issued by Customer. Financial Institution has no obligation to notify Customer of the rejection of an Entry but Financial Institution may do so at its option. Financial Institution shall have no liability to Customer for rejection of an Entry and shall not be liable to pay interest to Customer even if the amount of Customer's payment order is fully covered by a withdrawable credit balance in an Authorized Account of Customer or the Financial Institution has otherwise received full payment from Customer.

**17. CANCELLATION OR AMENDMENT BY CUSTOMER.** Customer shall have no right to cancel or amend any Entry after its receipt by Financial Institution. However, Financial Institution may, at its option, accept a cancellation or amendment by Customer. If Financial Institution accepts a cancellation or amendment of an Entry, Customer must comply with the Security Procedures provided in Section 7 of this Agreement. If such a request is received by the Financial Institution before the affected Entry has been transmitted to the ACH (or, in the case of an On-Us Entry, before the Receiver's account has been credited or debited), the Financial Institution will use reasonable efforts to cancel or amend the Entry as requested, but the Financial Institution shall have no liability if the cancellation or amendment is not effected. If Financial Institution accepts a cancellation or amendment of an Entry, Customer hereby agrees to indemnify, defend all claims and hold Financial Institution harmless from any loss, damages, or expenses, including but not limited to attorney's fees, incurred by Financial Institution as the result of its acceptance of the cancellation or amendment.

**18. REVERSALS OF ENTRIES.**

(a) General Procedure. Upon proper and timely request by the Customer, the Financial Institution will use reasonable efforts to effect a reversal of an Entry or File. To be "proper and timely," the request must (i) be made within five (5) Business Days of the Effective Entry Date for the Entry or File to be reversed; (ii) be made immediately, not to exceed ten (10) hours, upon discovery of the error; and (iii) be accompanied by a Reversal/Cancellation Request form and comply with all of the Rules. In addition, if the Customer requests reversal of a Debit Entry or Debit File, it shall concurrently deposit into the Customer Account an amount equal to that Entry or File. The Customer shall notify the Receiver of any reversing Entry initiated to correct any Entry it has initiated in error. The notification to the Receiver must include the reason for the reversal and be made no later than the Settlement Date of the reversing Entry.

(b) No Liability: Reimbursement to the Financial Institution. Under no circumstances shall the Financial Institution be liable for interest or related losses if the requested reversal of an Entry is not effected. The Customer shall reimburse the Financial Institution for any expenses, losses or damages it incurs in effecting or attempting to effect the Customer's request for reversal of an Entry.

**19. ERROR DETECTION.** Financial Institution has no obligation to discover and shall not be liable to Customer for errors made by Customer, including but not limited to errors made in identifying the Receiver, or an Intermediary or RDFI or for errors in the amount of an Entry or for errors in Settlement Dates. Financial Institution shall likewise have no duty to

Austin_Colby00151748

discover and shall not be liable for duplicate Entries issued by Customer. Notwithstanding the foregoing, if the Customer discovers that any Entry it has initiated was in error, it shall notify the Financial Institution of such error. If such notice is received no later than four (4) hours prior to the ACH receiving deadline, the Financial Institution will utilize reasonable efforts to initiate an adjusting Entry or stop payment of any On-Us" credit Entry within the time limits provided by the Rules. In the event that Customer makes an error or issues a duplicate Entry, Customer shall indemnify, defend all claims, and hold Financial Institution harmless from any loss, damages, or expenses, including but not limited to attorney's fees, incurred by Financial Institution as result of the error or issuance of duplicate Entries.

20. **PROHIBITED TRANSACTIONS.** Customer agrees not to use or attempt to use the Services (a) to engage in any illegal purpose or activity or to violate any applicable law, rule or regulation, (b) to breach any contract or agreement by which Customer is bound, (c) to engage in any internet or online gambling transaction, whether or not gambling is legal in any applicable jurisdiction, or (d) to engage in any transaction or activity that is not specifically authorized and permitted by this Agreement. Customer acknowledges and agrees that Financial Institution has no obligation to monitor Customer's use of the Services for transactions and activity that is impermissible or prohibited under the terms of this Agreement; provided, however, that Financial Institution reserves the right to decline to execute any transaction or activity that Financial Institution believes violates the terms of this Agreement.

21. **PRENOTIFICATION.** Customer, at its option, may send prenotification that it intends to initiate an Entry or Entries to a particular account within the time limits prescribed for such notice in the Rules. Such notice shall be provided to the Financial Institution in the format and on the medium provided in the media format section of such Rules. If Customer receives notice that such prenotification has been rejected by an RDFI within the prescribed period, or that an RDFI will not receive Entries without having first received a copy of the Authorization signed by its customer, Customer will not initiate any corresponding Entries to such accounts until the cause for rejection has been corrected or until providing the RDFI with such authorization within the time limits provided by the Rules.

22. **NOTICE OF RETURNED ENTRIES AND NOTIFICATIONS OF CHANGE.** Financial Institution shall notify Customer by e-mail, facsimile transmission, US mail, or other means of the receipt of a returned Entry from the ACH Operator. Except for an Entry retransmitted by Customer in accordance with the requirements of Section 5, Financial Institution shall have no obligation to retransmit a returned Entry to the ACH Operator if Financial Institution complied with the terms of this Agreement with respect to the original Entry. Customer shall notify the Receiver by phone or electronic transmission of receipt of each return Entry no later than one Business Day after the Business Day of receiving such notification from Financial Institution. Financial Institution shall provide Customer all information, as required by the Rules, with respect to each Notification of Change ("NOC") Entry or Corrected Notification of Change ("Corrected NOC") Entry received by Financial Institution relating to Entries transmitted by Customer. Financial Institution must provide such information to Customer within two (2) banking days of the Settlement Date of each NOC or Corrected NOC Entry. Customer shall ensure that changes requested by the NOC or Corrected NOC are made within three (3) banking days of Customer's receipt of the NOC information from Financial Institution or prior to initiating another Entry to the Receiver's account, whichever is later.

23. **ACCOUNT RECONCILIATION.** The Customer agrees to notify the Financial Institution promptly of any discrepancy between the Customer's records and the information shown on any periodic statement. If the Customer fails to notify the Financial Institution within ten (10) calendar days of receipt of a periodic statement containing such information; the Customer agrees that the Financial Institution shall not be liable for any other losses resulting from the Customer's failure to give such notice or any loss of interest or any interest equivalent with respect to any Entry shown on such periodic statement. If the Customer fails to notify the Financial Institution within thirty (30) calendar days of receipt of such periodic statement, the Customer shall be precluded from asserting any discrepancy against the Financial Institution.

24. **PROVISIONAL SETTLEMENT.** Customer shall be bound by and comply with the Rules as in effect from time to time, including without limitation the provision thereof making payment of an Entry by the RDFI to the Receiver provisional until receipt by the RDFI of final settlement for such Entry; and Customer acknowledges that it has received notice of that Rule and or the fact that, if such settlement is not received, the RDFI shall be entitled to a refund from the Receiver of the amount credited and Customer shall not be deemed to have paid the Receiver the amount of the Entry.

25. **CUSTOMER REPRESENTATIONS AND WARRANTIES; INDEMNITY.** With respect to each and every Entry transmitted by Customer, Customer represents and warrants to Financial Institution and agrees that (a) each person or entity shown as the Receiver on an Entry received by Financial Institution from Customer has authorized the initiation of such Entry and the crediting or debiting of its account in the amount and on the Effective Entry Date shown on such Entry, (b) such authorization is operative at the time of transmittal or crediting or debiting by Financial Institution as provided herein, (c) Entries transmitted to Financial Institution by Customer are limited to those types of credit and debit Entries set forth in **Schedule A**, (d) Customer shall perform its obligations under this Agreement in accordance with all applicable laws, regulations, and orders, including, but not limited to, the sanctions laws, regulations, and orders administered by OFAC; laws, regulations, and orders administered FinCEN; and any state laws, regulations, or orders applicable to the providers of ACH payment services, and (e) Customer shall be bound by and comply with the provision of the *Rules* (among other provisions of the *Rules*) making payment of an Entry by the RDFI to the Receiver provisional until receipt by the RDFI of final settlement for such Entry. Customer specifically acknowledges that it has received notice of the rule regarding provisional payment and

Austin_Colby00151749

of the fact that, if such settlement is not received, the RDFI shall be entitled to a refund from the Receiver of the amount credited and Customer shall not be deemed to have paid the Receiver the amount of the Entry. The Customer shall defend, indemnify, and hold harmless the Financial Institution, and its officers, directors, agents, and employees, from and against any and all actions, costs, claims, losses, damages, or expenses, including attorney's fees and expenses, resulting from or arising out of (aa) any breach of any of the agreements, representations or warranties of the Customer contained in this Agreement; or (bb) any act or omission of the Customer or any other person acting on the Customer's behalf.

**26.    FINANCIAL INFORMATION AND AUDIT.** Financial Institution may from time to time request information from Customer in order to evaluate a continuation of the Service to be provided by Financial Institution hereunder and/or adjustment of any limits set by this Agreement. Customer agrees to provide the requested financial information immediately upon request by Financial Institution, in the form required by Financial Institution. Customer authorizes Financial Institution to investigate or reinvestigate at any time any information provided by Customer in connection with this Agreement or the Service. Upon request by Financial Institution, Customer hereby authorizes Financial Institution to enter Customer's business premises for the purpose of ensuring that Customer is in compliance with this Agreement and Customer specifically authorizes Financial Institution to perform an audit of Customer's operational controls, risk management practices, staffing and the need for training and ongoing support, and information technology infrastructure. Customer hereby acknowledges and agrees that Financial Institution shall have the right to mandate specific internal controls at Customer's location(s) and Customer shall comply with any such mandate. In addition, Customer hereby agrees to allow Financial Institution to review available reports of independent audits performed at the Customer location related to information technology, the Service and any associated operational processes. Customer agrees that if requested by Financial Institution, Customer will complete a self-assessment of Customer's operations, management, staff, systems, internal controls, training and risk management practices that would otherwise be reviewed by Financial Institution in an audit of Customer. If Customer refuses to provide the requested financial information, or if Financial Institution concludes, in its sole discretion, that the risk of Customer is unacceptable, if Customer violates this Agreement or the Rules, or if Customer refuses to give Financial Institution access to Customer's premises, Financial Institution may terminate the Service and this Agreement according to the provisions hereof.

**27.    LIMITATION OF LIABILITY.**

(a)    IN THE PERFORMANCE OF THE SERVICES REQUIRED BY THIS AGREEMENT, FINANCIAL INSTITUTION SHALL BE ENTITLED TO RELY SOLELY ON THE INFORMATION, REPRESENTATIONS, AND WARRANTIES PROVIDED BY CUSTOMER PURSUANT TO THIS AGREEMENT, AND SHALL NOT BE RESPONSIBLE FOR THE ACCURACY OR COMPLETENESS THEREOF. FINANCIAL INSTITUTION SHALL BE RESPONSIBLE ONLY FOR PERFORMING THE SERVICES EXPRESSLY PROVIDED FOR IN THIS AGREEMENT, AND SHALL BE LIABLE ONLY FOR ITS GROSS NEGLIGENCE OR WILLFUL MISCONDUCT IN PERFORMING THOSE SERVICES. FINANCIAL INSTITUTION SHALL NOT BE RESPONSIBLE FOR CUSTOMER'S ACTS OR OMISSIONS (INCLUDING, WITHOUT LIMITATION, THE AMOUNT, ACCURACY, TIMELINESS OF TRANSMITTAL OR AUTHORIZATION OF ANY ENTRY RECEIVED FROM CUSTOMER) OR THOSE OF ANY OTHER PERSON, INCLUDING, WITHOUT LIMITATION, ANY FEDERAL RESERVE BANK, ACH OPERATOR OR TRANSMISSION OR COMMUNICATIONS FACILITY, ANY RECEIVER OR RDFI (INCLUDING, WITHOUT LIMITATION, THE RETURN OF ANY ENTRY BY SUCH RECEIVER OR RDFI), AND NO SUCH PERSON SHALL BE DEEMED FINANCIAL INSTITUTION'S AGENT. CUSTOMER AGREES TO INDEMNIFY FINANCIAL INSTITUTION AGAINST ANY LOSS, LIABILITY OR EXPENSE (INCLUDING ATTORNEYS' FEES AND COSTS) RESULTING FROM OR ARISING OUT OF ANY CLAIM OF ANY PERSON THAT THE FINANCIAL INSTITUTION IS RESPONSIBLE FOR ANY ACT OR OMISSION OF CUSTOMER OR ANY OTHER PERSON DESCRIBED IN THIS SECTION 27(a).

(b)    FINANCIAL INSTITUTION SHALL BE LIABLE FOR CUSTOMER'S ACTUAL DAMAGES DUE TO CLAIMS ARISING SOLELY FROM FINANCIAL INSTITUTION'S GROSS NEGLIGENCE OR WILLFUL MISCONDUCT; IN NO EVENT SHALL FINANCIAL INSTITUTION BE LIABLE FOR ANY CONSEQUENTIAL, SPECIAL, INCIDENTAL, PUNITIVE OR INDIRECT LOSS OR DAMAGE WHICH CUSTOMER MAY INCUR OR SUFFER IN CONNECTION WITH THIS AGREEMENT, WHETHER OR NOT THE LIKELIHOOD OF SUCH DAMAGES WAS KNOWN OR CONTEMPLATED BY THE FINANCIAL INSTITUTION AND REGARDLESS OF THE LEGAL OR EQUITABLE THEORY OF LIABILITY WHICH CUSTOMER MAY ASSERT, INCLUDING, WITHOUT LIMITATION, LOSS OR DAMAGE FROM SUBSEQUENT WRONGFUL DISHONOR RESULTING FROM FINANCIAL INSTITUTION'S ACTS OR OMISSIONS PURSUANT TO THIS AGREEMENT.

(c)    WITHOUT LIMITING THE GENERALITY OF THE FOREGOING PROVISIONS, FINANCIAL INSTITUTION SHALL BE EXCUSED FROM FAILING TO ACT OR DELAY IN ACTING IF SUCH FAILURE OR DELAY IS CAUSED BY LEGAL CONSTRAINT, INTERRUPTION OF TRANSMISSION OR COMMUNICATION FACILITIES, EQUIPMENT FAILURE, WAR, EMERGENCY CONDITIONS OR OTHER CIRCUMSTANCES BEYOND FINANCIAL INSTITUTION'S CONTROL. IN ADDITION, FINANCIAL INSTITUTION SHALL BE EXCUSED FROM FAILING TO TRANSMIT OR DELAY IN TRANSMITTING AN ENTRY IF SUCH TRANSMITTAL WOULD RESULT IN FINANCIAL INSTITUTION'S HAVING EXCEEDED ANY LIMITATION UPON ITS INTRA-DAY NET FUNDS POSITION

Austin_Colby00151750

ESTABLISHED PURSUANT TO PRESENT OR FUTURE FEDERAL RESERVE GUIDELINES OR IN FINANCIAL INSTITUTION'S REASONABLE JUDGMENT OTHERWISE WOULD VIOLATE ANY PROVISION OF ANY PRESENT OR FUTURE RISK CONTROL PROGRAM OF THE FEDERAL RESERVE OR ANY RULE OR REGULATION OF ANY OTHER U.S. GOVERNMENTAL REGULATORY AUTHORITY.

(d)    SUBJECT TO THE FOREGOING LIMITATIONS, FINANCIAL INSTITUTION'S LIABILITY FOR LOSS OF INTEREST RESULTING FROM ITS ERROR OR DELAY SHALL BE CALCULATED BY USING A RATE EQUAL TO THE AVERAGE FEDERAL FUNDS RATE AT THE FEDERAL RESERVE BANK OF NEW YORK FOR THE PERIOD INVOLVED.   AT FINANCIAL INSTITUTION'S OPTION, PAYMENT OF SUCH INTEREST MAY BE MADE BY CREDITING THE ACCOUNT.

**28.    INCONSISTENCY OF NAME AND ACCOUNT NUMBER.** The Customer acknowledges and agrees that, if an Entry describes the Receiver inconsistently by name and account number, payment of the Entry transmitted by the Financial Institution to the RDFI may be made by the RDFI (or by the Financial Institution in the case of an On-Us Entry) on the basis of the account number supplied by the Customer, even if it identifies a person different from the named Receiver, and that the Customer's obligation to pay the amount of the Entry to the Financial Institution is not excused in such circumstances. Customer is liable for and must settle with Financial Institution for any Entry initiated by Customer that identifies the Receiver by account or identifying number or by name and account or identifying number.

**29.    PAYMENT FOR SERVICES.** The Customer shall pay the Financial Institution the charges for the services provided in connection with this Agreement, as set forth in **Schedule D**. All fees and services are subject to change upon thirty (30) days prior written notice from the Financial Institution.   Such charges do not include, and the Customer shall be responsible for payment of, any sales, use, excise, value added, utility or other similar taxes relating to such services, and any fees or charges provided for in the Depository Agreement between the Financial Institution and the Customer with respect to the Account.

**30.    AMENDMENTS.** Except as provided in Section 29, the Financial Institution may amend this agreement from time to time upon written notice to the Customer.  In the event that performance of services under this Agreement would result in a violation of any present or future statute, regulation or governmental policy to which the Financial Institution is subject, then this Agreement shall be amended to the extent necessary to comply with such statute, regulation or policy.  Alternatively, the Financial Institution may terminate this Agreement if it deems such action necessary or appropriate under the circumstances. The Financial Institution shall have no liability to the Customer as a result of any such violation, amendment or termination. Any practices or course of dealings between the Financial Institution and the Customer, or any procedures or operational alterations used by them, shall not constitute a modification of this Agreement or the Rules, nor shall they be construed as an amendment to this Agreement or the Rules.

**31.    NOTICES, INSTRUCTIONS, ETC.**

(a)    Except as stated herein, the Financial Institution shall not be required to act upon any notice or instruction received from the Customer or any other person, or to provide any notice or advice to the Customer or any other person with respect to any matter.

(b)    The Financial Institution shall be entitled to rely on any written notice or other written communication believed by it in good faith to be genuine and to have been signed by an authorized representative of Customer, and any such communication shall be deemed to have been signed by such person.  Such notice shall be effective on the second Business Day following the day received by the Financial Institution.

(c)    Except as stated herein, any written notice or other written communication required or permitted to be given under this Agreement shall be delivered or sent by US mail, if to Customer, at the address of Customer on the books of Financial Institution and if to Financial Institution, at the following address:

American Momentum Bank
Attn: ACH Department
4830 W. Kennedy Blvd. Suite 200
Tampa, FL 33609

unless another address is substituted by notice delivered or sent as provided heron.  Except as otherwise stated herein, any such notice shall be deemed given when received.

**32.    DATA RETENTION.** The Customer shall retain data on file adequate to permit the remaking of Entries for five (5) Business Days following the date of their transmittal by the Financial Institution as provided herein, and shall provide such Data to the Financial Institution upon its request.

**33.    DATA MEDIA AND RECORDS.** All data media, Entries, security procedures and related records used by the Financial Institution for transactions contemplated by this Agreement shall be and remain the Financial Institution's property. The Financial Institution may, at its sole discretion, make available such information upon the Customer's request.  Any

Austin_Colby00151751

expenses incurred by the Financial Institution in making such information available to the Customer shall be paid by the Customer.

**34.   COOPERATION IN LOSS RECOVERY EFFORTS.** In the event of any damages for which Financial Institution or Customer may be liable to each other or to a third party pursuant to the services provided under this Agreement, Financial Institution and Customer will undertake reasonable efforts to cooperate with each other, as permitted by applicable law, in performing loss recovery efforts and in connection with any actions that the relevant party may be obligated to defend or elects to pursue against a third party.

**35.   TERMINATION.**   Either party may terminate this Agreement upon thirty (30) calendar days written notice to the other; provided however that Financial Institution may terminate this agreement immediately upon its determination that Customer is in violation of this Agreement, the ACH Rules or applicable laws or if Customer initiates any bankruptcy proceeding or is otherwise declared insolvent. Any termination of this Agreement shall not affect any of Financial Institution's rights or Customer's obligations with respect to any Entries initiated by Customer prior to such termination, or the payment obligations of Customer with respect to services performed by Financial Institution prior to termination, or any other obligations that survive termination of this Agreement.   Customer's obligation with respect to any Entry shall survive termination of this Agreement until any applicable statute of limitation has elapsed.

**36.   ENTIRE AGREEMENT.**   This Agreement (including the Schedules attached) together with the Depository Agreement, is the complete and exclusive statement of the agreement between the Financial Institution and the Customer with respect to the subject matter hereof and supersedes any prior agreement(s) between the Financial Institution with respect to such subject matter. In the event of any inconsistency between the terms of this Agreement and the Depository Agreement, the terms of this Agreement shall govern. In the event performance of the services provided herein in accordance with the terms of this Agreement would result in a violation of any present or future statute, regulation or government policy to which the Financial Institution is subject, and which governs or affects the transactions contemplated by this Agreement, then this Agreement shall be deemed amended to the extent necessary to comply with such statute, regulation or policy, and the Financial Institution shall incur no liability to the Customer as a result of such violation or amendment. No course of dealing between the Financial Institution and the Customer will constitute a modification of this Agreement, the Rules, or the security procedures, or constitute an agreement between the Financial Institution and the Customer regardless of whatever practices and procedures the Financial Institution and the Customer may use.

**37.   NON-ASSIGNMENT.** The Customer may not assign this Agreement or any of the rights or duties hereunder to any person without the Financial Institution's prior written consent.

**38.   WAIVER.** The Financial Institution may waive enforcement of any provision of this Agreement. Any such waiver shall not affect the Financial Institution's rights with respect to any other transaction or modify the terms of this Agreement.

**39.   BINDING AGREEMENT; BENEFIT.** This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective legal representatives, successors, and assigns. This Agreement is not for the benefit of any other person, and no other person shall have any right against the Financial Institution or the Customer hereunder.

**40.   HEADINGS.** Headings are used for reference purposes only and shall not be deemed part of this Agreement.

**41.   SEVERABILITY.** In the event that any provision of this Agreement shall be determined to be invalid, illegal, or unenforceable to any extent, the remainder of this Agreement shall not be impaired or otherwise affected and shall continue to be valid and enforceable to the fullest extent permitted by law.

**42.   GOVERNING LAW.** This Agreement shall be construed in accordance with and governed by the laws of the State of Florida, without reference to its conflict of laws provisions, and applicable federal law.

IN WITNESS WHEREOF the parties hereto have caused this Agreement to be executed by their duly authorized officers.

| *Financial Institution* | *Customer* |
|---|---|
| **American Momentum Bank** | **The Center for Special Needs Trust Administration** |
| By: _____ | By: _Caitlin Janicki_ |
| Name: Sherry Lilly  sg | Name:  Caitlin Janicki |
| Title:  VP Treasury Mgmt Sales Officer | Title: _Vice President_ |

Austin_Colby00151752

# Schedule A
## Customer Selected
## Standard Entry Class Code

As used in the Agreement, the following* are ACH Standard Entry Class Codes (SEC) approved for use by Customer (check all that apply), subject to any specific restrictions on the types of ACH transactions that may be originated, which are identified by Financial Institution below:

*CCD – Corporate Credit or Debit* – Either a credit or debit where funds are either distributed or consolidated between corporate entities. May have one addenda record attached (CCD+)

*CTX - Corporate Trade Exchange* –The transfer of funds (debit or credit) within a trading partner relationship in which payments related information is placed in multiple addenda records. (up to 9,999 addenda records).

*PPD - Prearranged Payment and Deposit*
   o   **Direct Deposit** - The transfer of funds into a consumer's account. Funds being deposited can represent a variety of products, such as payroll, interest, pension, dividends, etc.
   o   **Direct Payment** - Preauthorized payment is a debit application. This includes recurring bills that do not vary in amount -- insurance premiums, mortgage payments, charitable contributions, and installment loan payments or standing authorizations where the amount does vary, such as utility payments.

*The above SEC Codes are the most commonly-used and not an all-inclusive list.

Financial Institution has identified the following ACH transaction restrictions:

_____

# Schedule B
## Processing Schedule

## Delivery of ACH Files:

- <u>Internet transmissions</u>
  The Company may electronically transmit files to the Financial Institution via our Online Banking system – Momentum Connect.

- <u>Format and content of entries</u>
  All files must be submitted in NACHA format. The Company should refer to Appendix Two in the NACHA Rulebook for specific formatting details.

- <u>Timing of delivery</u>
  Processing Deadline for all files is 4:30 PM EST, two (2) business days prior to the Effective Date* of the file.

*"Effective Date" must be a Business Day or the file will be processed on the first business day following the effective date.

Austin_Colby00151753

# Schedule C
## Security Procedures

Customer is responsible to strictly establish and to maintain procedures to safeguard against unauthorized transactions. Customer warrants that no individual will be allowed to initiate transfers in the absence of proper supervision and safeguards, and agrees to take reasonable steps to maintain the confidentiality of the security procedures and any passwords, codes, security devices, and related instructions provided by Financial Instituion. If Customer believes or suspects that any such information has been accessed by an unauthorized individual, Customer will verbally notify Financial Institution immediately, followed by written confirmation. The occurrence of such notification will not affect any transfers made in good faith by Financial Institution prior to the notification and within a reasonable time period to prevent unauthorized transfers.

**Data Security:**

Limiting access and securely storing ACH data used in the routing and settlement of ACH transactions is a critical data security precaution. Customer's ability to limit access to production data can be done through commercially available software products. Access can be limited to specific programs, user IDs, or read-only or read-and-edit-only access functionality. Files can also be transmitted between ACH participants using the following data protection methods: encryption and authentication.

- **Encryption** is a process of scrambling data content through hardware or software in order to protect the confidentiality of a file's contents. This information should remain encrypted between all parties in the ACH Network using commercially reasonable procedures and must be transmitted using security technology that is 128-bit RC4 technology (minimum standards).
- **Authentication** is a process of ensuring that files and data content have not been altered between the Orginator and receiving points. Like encryption, this can be done using hardware or software to ensure data integrity.

**Transmittal of Files:**

- Customer will transmit files to Financial Institution via pre-arranged access to ACH system utilizing agreed upon logon procedures and proper access identification.
- Files will be encrypted by Customer before being transmitted to Financial Institution.

Should any of the above procedures not be met, the file will be rejected by Financial Institution and Customer will be notified.

**Data Security:**

Limiting access and securely storing ACH data used in the routing and settlement of ACH transactions is a critical data security precaution. Customer's ability to limit access to production data can be done through commercially available software products. Access can be limited to specific programs, user IDs, or read-only or read-and-edit-only access functionality. Files can also be transmitted between ACH participants using the following data protection methods: encryption and authentication.

- **Encryption** is a process of scrambling data content through hardware or software in order to protect the confidentiality of a file's contents. This information should remain encrypted between all parties in the ACH Network using commercially reasonable procedures and must be transmitted using security technology as provided in the Rules.
- **Authentication** is a process of ensuring that files and data content have not been altered between the Orginator and receiving points. Like encryption, this can be done using hardware or software to ensure data integrity.

Customer understands and agrees that the authenticity of any ACH File or Entry transmitted to the Financial Institution will be verified pursuant to the following security procedures:

Security Procedure:

No.     Description

1.     **Files transmitted by Company may not exceed the dollar limits set by Financial Institution.**

2.     **Only authorized Online Banking users may transmit files to Financial Institution.**

3.     **Company must subscribe to multifactor authentication, out of bank verification, for transmission of files from Financial Institution Online Banking service.**

Austin_Colby00151754

CIF #:TAA0078

# Schedule D
## Fees

**Fee Schedule\*:** Company authorizes Financial Institution to debit any of the following fees from Company's Account.

> \*If fees are not outlined below, they are provided separately as part of a fully analyzed account package.

| | |
|---|---|
| **Transmittal Fee (per file):** | $ 5.00 |
| **Transaction Item Fee (per item):** | $ 0.10 |
| **Return Item Fee:** | $ |
| **Notification of Corrections (per NOC):** | $ |
| **ACH Monthly Maintenance Fee:** | $ 15.00 |
| **Deletions or Reversals** | $ |
| **Corporate Rules Book** | $ |
| | |
| | |
| | |
| **Account Number to be debited for Fees:** | 7061714, 7061722, 7041640 |

Austin_Colby00151755

# Schedule E
# ACH Implementation Form

| Company Information | | |
|---|---|---|
| Date: 03/10/2021 | CIF Number: | TAA0078 |
| Company Name: The Center for Special Needs Trust Admin | Tax ID: | 59-3705979 |
| Address: 4912 Creekside Dr. Clearwater FL. 33760 | | |

## Contact Information (For File Validation)

| Contact Name: Laura Davis | Phone: | 727-497-1660 |
|---|---|---|
| Contact Email: Laura.davis@centersmail.com | | |

**ACH Company Name**
(as it appears in ACH files - 16 spaces allowed):  Center for SNT

**ACH Company ID**
(as it appears in ACH files - 10 spaces allowed):  1593705979

**SEC Codes to be used:**
(Standard Entry Class Codes)  CCD & PPD

Offset Account Number:

Settlement Account Number:   7061714

**\*\*The settlement account is used to validate the balance when the file is originated.**

Return Account Number:   7061714

**\*\*The ACH item return will auto-settle to the return account listed in this field.**

| Settlement account balance to use: | Available | File Method: | Q2 |
|---|---|---|---|

Daily Total Dollar Limit During Origination:   $350,000.00

| Treasury Management Officer: | Sherry Lilly | Ext: | 4723 |
|---|---|---|---|

**\*\*NOTE: The Operational Client Risk Profile must be approved and attached.**

Faxing Instructions: American Momentum Bank

Attention: Electronic Banking Department - Fax Number #: 813-549-4834

| Internal Use | Received On: | Submitted By: |
|---|---|---|
| OCR Attached & Approved: | Completed On: | Associate Initials: |

Austin_Colby00151756

# Schedule E
## ACH Implementation Form

| Company Information | | |
|---|---|---|
| Date: 03/10/2021 | CIF Number: | TAA0078 |
| Company Name: The Center for Special Needs Trust Admin | Tax ID: | 59-3705979 |
| Address: 4912 Creekside Dr. Clearwater FL. 33760 | | |

**Contact Information (For File Validation)**

| | | |
|---|---|---|
| Contact Name: Laura Davis | Phone: | 727-497-1660 |
| Contact Email: Laura.davis@centersmail.com | | |

ACH Company Name
(as it appears in ACH files - 16 spaces allowed):          CENTER FOR SPECI

ACH Company ID
(as it appears in ACH files - 10 spaces allowed):          593705979

SEC Codes to be used:
(Standard Entry Class Codes)          CCD & PPD

Offset Account Number:

Settlement Account Number:          7061722
   **The settlement account is used to validate the balance when the file is originated.**

Return Account Number:          7061722
   **The ACH item return will auto-settle to the return account listed in this field.**

| Settlement account balance to use: | Available | File Method: | Q2 |
|---|---|---|---|

Daily Total Dollar Limit During Origination:          $90,000.00

Treasury Management Officer:          Sherry Lilly          Ext:          4723

**NOTE: The Operational Client Risk Profile must be approved and attached.**

Faxing Instructions:  American Momentum Bank

Attention: Electronic Banking Department - Fax Number #: 813-549-4834

| Internal Use | Received On: | Submitted By: |
|---|---|---|
| OCR Attached & Approved: | Completed On: | Associate Initials: |

Austin_Colby00151757

# Schedule E
## ACH Implementation Form

| Company Information | | |
|---|---|---|
| Date: 03/10/2021 | CIF Number: | TAA0078 |
| Company Name: The Center for Special Needs Trust Admin | Tax ID: | 59-3705979 |
| Address: 4912 Creekside Dr. Clearwater FL. 33760 | | |

**Contact Information (For File Validation)**

| | | |
|---|---|---|
| Contact Name: Laura Davis | Phone: | 727-497-1660 |
| Contact Email: Laura.davis@centersmail.com | | |

| | |
|---|---|
| ACH Company Name (as it appears in ACH files - 16 spaces allowed): | The Center SNT |
| ACH Company ID (as it appears in ACH files - 10 spaces allowed): | 2593705979 |
| SEC Codes to be used: (Standard Entry Class Codes) | CCD & PPD |

Offset Account Number:

Settlement Account Number: 7041640

**The settlement account is used to validate the balance when the file is originated.**

Return Account Number: 7041640

**The ACH item return will auto-settle to the return account listed in this field.**

| | | | |
|---|---|---|---|
| Settlement account balance to use: | Available | File Method: | Q2 |

Daily Total Dollar Limit During Origination: $10,000.00

| | | | |
|---|---|---|---|
| Treasury Management Officer: | Sherry Lilly | Ext: | 4723 |

**NOTE: The Operational Client Risk Profile must be approved and attached.**

Faxing Instructions: American Momentum Bank

Attention: Electronic Banking Department - Fax Number #: 813-549-4834

| Internal Use | Received On: | Submitted By: |
|---|---|---|
| OCR Attached & Approved: | Completed On: | Associate Initials: |

Austin_Colby00151758

CIF #:TAA0078

# Schedule F
## ACH Originating Company Information

| | |
|---|---|
| Company Name: | The Center for Special Needs Trust Administration Inc. |
| Street Address: | 4912 Creekside Dr. |
| City, State, Zip | Clearwater FL  33760 |
| Company ID: | 59-3705979 |
| Company Phone Number: | 727-894-4489 |
| Company Fax Number: | |
| Primary Contact Name & Phone Number: | Laura Davis 727-497-1660 |
| Secondary Contact Name & Phone Number: | Caitlin Janiki 727-497-1668 |
| Authorized Account Number: | 7061714 |
| Authorized Account Number: | 7061722 |
| Authorized Account Number: | 7041640 |
| Authorized Account Number: | |
| Authorized Account Number: | |

Austin_Colby00151759

# Schedule G
## Holidays

<u>Holiday Calendar:</u>  Financial Institution will be closed on the following standard holidays observed by the Federal Reserve Bank.  Financial Institution will not accept files for processing on the following days, as well as all Saturdays and Sundays.  Be careful to make sure that these dates are not used as Effective Entry Dates:

New Year's Day   (January 1)
Martin Luther King, Jr. Day   (Third Monday in January)
Presidents' Day   (Third Monday in February)
Memorial Day   (Last Monday in May)
Independence Day   (July 4)
Labor Day   (First Monday in September)
Columbus Day   (Second Monday in October)
Veterans' Day   (November 11)
Thanksgiving Day   (Fourth Thursday in November)
Christmas Day   (December 25)

Note:  For holidays falling on Saturday. Federal Reserve Banks and Branches will be open the preceding Friday. For holidays falling on Sunday, all Federal Reserve Banks and Branches will be closed the following Monday.

Austin_Colby00151760

| CIF #: |
|---|

# Schedule H – (Only if required by the Credit Department)

## Principal/Owner Guaranty

The undersigned hereby guarantees the prompt payment and performance of all amounts, fees, and obligations of _____The Center for SNT Admin, Inc_____ (Company) due and owing to <u>American Momentum Bank</u> (Financial Institution) arising under or in connection with the Company Agreement for ACH Origination (the "Agreement"), dated of even date herewith between Company and Financial Institution.  This Guaranty is intended to cover all obligations of Company under the Agreement, including, but not limited to, (a) the payment of fees and amounts arising under the Agreement or in connection with any deposit account maintained by Company with Financial Institution, (b) the compliance by Financial Institution with all laws, regulations and rules related to Company's origination and processing of ACH Entries under the Agreement, (c) Company's obligations with respect to Reserves and the return of ACH Entries under the Agreement and (d) the accuracy and performance of Company's warranties under the Agreement.

In order to secure the payment and performance of this Guaranty, the undersigned hereby grants to Financial Institution a security interest in and to all deposit accounts owned by the undersigned and maintained at Financial Institution.

The undersigned hereby agrees and acknowledges that this Guaranty is a guarantee of performance and not of collection, and that Financial Institution may, upon default or violation by Company of any terms of the Agreement, proceed directly against the undersigned for satisfaction and performance of the obligations of Company under the Agreement without first proceeding against Company.

Executed this __15__ day of ____March____, 20__21__

_____
Signature of Principal/Owner

_____
Signature of Principal/Owner

_____
Signature of Principal/Owner

_____
Signature of Principal/Owner

Austin_Colby00151761

# AMERICAN ✕MOMENTUM BANK

## *2020*
### *Annual ACH Training for ACH Originators*

### NACHA Operating Rules & Guidelines

This is a reminder that the National Automated Clearing House Association (NACHA) requires that you, as an ACH originator, comply with its Operating Rules & Guidelines. AMB recommends that all ACH Originators obtain a copy of the NACHA Operating Rules & Guidelines-Corporate Edition.  The ACH Rules for Corporate Originators is published annually and may be ordered at https://www.NACHA.org.  Alternatively, an electronic version of the ACH Rules may be viewed online by registering at http://www.achrulesonline.org/.

# As an ACH originator:

## Each ACH company must have a signed agreement (online banking/ACH agreement on file)
- This agreement defines the parameters between the parties.
- Establishes liabilities.
- Binds the Originator to the NACHA Operating Rules.
- Binds the Originator to applicable US Laws.
- Client accounts should have funds in the account the day the files will be sent in to the ACH network (one day prior to the effective date for Debits and two days before the effective date for Credits).
- Client should notify the Treasury department in advance if a file will exceed the daily file limit.  By not notifying, it could cause a delay in the file processing.
- ACH files must be received prior to 4:30pm EST 3:30pm CST.  Receipt of late files could cause delays in processing.

### Your Responsibilities as an Originator

- Obtain receiver routing number, account number, type of account, with a dated and signed or similarly authenticated authorizations.
- Make necessary changes to payee account information within six banking days upon receipt of a Notice of Correction or before another entry is sent.
- Protect the banking information received to originate transactions.

1

Austin_Colby00151762

# AMERICAN ◣OMENTUM BANK

- Ensure that your computers are protected as outlined in the AMB Internet Cash Management Master Agreement and ACH Agreement.

## Prenotifications (Prenotes)

- Prenotes are zero-dollar entries that precede the first live entry. The purpose of a prenote is to verify account information.
- Prenotes are optional for you to send. However, if sent, prenote rules must be followed and a prenote must precede the first live entry by at least three (3) banking days.

NACHA rule: If requested, the Originator's financial institution may be required to provide proof of authorization. The financial institution must provide the required information within ten business days of receiving written request.

*What this means to you?* If requested you will need to provide the requested information to the bank.

# Fraud Prevention:

## View your online banking transactions daily

- This includes funds transfer, bill pay, wire transfers and ACH files.

- If you are the Security Administrator Manager you should review all transactions for your company.

- You do not want to allow logins that are not monitored to remain active. Make sure all logins are accurate and that the individuals listed are still employed or should have access. Users should not share logins and passwords and each user should have their own login to systems.

- Each originator needs to evaluate its current policies, procedures and systems to ensure the company identifies safeguards for protected information, non-public

2

Austin_Colby00151763

# AMERICAN MOMENTUM BANK

information including financial information of customers. Having the proper security systems in place can help to assist with account takeover. Security policies, procedures and systems must:

- Protect against threats or hazards.
- Protect confidential information.
- Originator should be willing and able to prove compliance to the financial institution.
- Protect against unauthorized use of protected information.

# Returns and Notifications of Change:

- You may be contacted by an operations specialist at American Momentum Bank in regards to an ACH Return or Notifications of Change (NOC).

- It is your responsibility to correct all incorrect information. If you do not make the necessary changes and we continue to contact you regarding the same NOC, you could be subject to fines or termination of ACH services by NACHA and/or American Momentum Bank.

## Return Item Codes:

- R01-Insufficient Funds
- R02-Closed Account
- R03-No account/Unable to locate account/Invalid account name
- R04-Invalid account number
- R08-Stop Payment
- R10-Unauthoirzed
- R13-Non-participating RDFI
- R16-Account Frozen
- R29-Coporate transaction unauthorized

3

Austin_Colby00151764

# AMERICAN ℳOMENTUM BANK

- A returned entry cannot be reinitiated by the Originator without a new authorization from the customer unless the item was returned for NSF or Uncollected Funds.
- Entries may only be reinitiated twice for NSF. After the second return the money must be collected via another payment method.

# ACH Limit Reviews:

For your business's security:

Regulators require ACH limits and relationships to be reviewed annually.

- You may be required to provide financial data yearly to maintain your ACH access and limit.

- This includes Financial Statements and/or Tax Returns.

- If you do not use the ACH services for 60 consecutive days, we will disable your access and you may be required to start the approval process over from the beginning.

If you have further questions, please feel free to contact your Treasury Support Specialist. 1-866-530-2265.

4

Austin_Colby00151765

# AMERICAN MOMENTUM BANK

### *Annual 2020*
### *ACH Training for ACH Originators*
### *Acknowledgment Form*

By signing below, I/We acknowledge that I have reviewed the ACH training material and understand my role and responsibility as an ACH originator.

| LIST BUSINESS ACCOUNTS PROCESSING ACH | |
|---|---|
| **Center for SNT** | |
| **The Center SNT** | |
| **CENTER FOR SPECI** | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

**Authorized Signer:** _____     **Date:** 3/15/2021

5

Austin_Colby00151766

# AMERICAN MOMENTUM BANK

## *DIRECT DEPOSIT AUTHORIZATION SAMPLE*

I (we) hereby authorize ___(company name)___, hereinafter called "COMPANY", to initiate credit entries and, if necessary, debit correction and adjustment entries to my (our) accounts at the financial institution(s) listed below, hereinafter called DEPOSITORY. I (we) acknowledge that the origination of ACH transactions to my (our) account must comply with the provisions of U.S. laws and regulations.

**Primary Account: (Deposit Net Pay)**
Depository
Name _____    Branch _____

Address _____    City _____    State _____    Zip _____

Routing &
Transit Number _____    Account
Number _____

**Secondary Account: (Amount to Deposit) $** _____
Depository
Name _____    Branch _____

Address _____    City _____    State _____    Zip _____

Routing &
Transit Number _____    Account
Number _____

| Account Type:  □ Checking/Draft |  □ Savings/Share |
| □ Loan | |

I/We understand that this authorization replaces any previous authorization and will remain in full force and effect until COMPANY has received written notification from me (or either of us) of its termination in such a time and manner as to afford COMPANY and DEPOSITORY a reasonable time to act upon it.

Name(s)_____ID Number _____
(Please Print)

Date _____    Signature(s) _____

Please attach a voided check or financial institution account verification letter to this form.

6

Austin_Colby00151767

# AMERICAN MOMENTUM BANK

## *Appendix C*
## *DIRECT PAYMENT AUTHORIZATION SAMPLE*

I (we) hereby authorize _____, hereinafter called "COMPANY", to initiate debit entries and, if necessary, credit correction and adjustment entries to my (our) account at the financial institution listed below, hereinafter called DEPOSITORY. I (we) acknowledge that the origination of ACH transactions to my (our) account must comply with the provisions of U.S. laws and regulations.

Depository
Name _____   Branch _____

Address _____   City _____   State ____   Zip ____

Routing &
Transit Number _____   Account
Number _____

Account Type:   □        Checking/Draft □
Savings/Share   □

Date to Debit_____

Recurrence:   □ Quarterly   □ Monthly   □ Weekly   □ One Time

This authorization is to remain in full force and effect until COMPANY has received written notification from me (or either of us) of its termination in such a time and manner as to afford COMPANY and DEPOSITORY a reasonable time to act upon it.

Name _____
(Please Print)                 (Signature)

Name _____
(Please Print)                 (Signature)

Date _____

**Please attach a voided check to this form**

7

Austin_Colby00151768