**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| In re: | Case No. 8-24-bk-00676-RCT |
| THE CENTER FOR SPECIAL NEEDS TRUST ADMINISTRATION, INC., | Chapter 11 |
| Debtor. | |

| | |
|---|---|
| Michael Goldberg, Chapter 11 Trustee | Adversary Pro. No. 8-26-ap-00015-RCT |
| Plaintiff, | |
| v. | |
| AMERICAN MOMENTUM BANK, | |
| Defendant. | |
| _____ / | |

### AGREED MOTION FOR ENTRY OF JOINT STIPULATED ESI PROTOCOL

Plaintiff, Michael Goldberg, in his capacity as Chapter 11 Trustee ("**Trustee**") of the bankruptcy estate of The Center for Special Needs Trust Administration, Inc., and the Defendant, American Momentum Bank, ("**American Momentum**") jointly move the Court for entry of the Parties' agreed-upon protocol governing the identification, preservation, collection, processing, search, review, and production of electronically stored information ("**ESI**") in this action (the "**ESI Protocol**").

The Parties have met and conferred pursuant to Federal Rule of Civil Procedure 26(f), the Federal Rules of Civil Procedure, the Federal Rules of Evidence, and any applicable local rules and standing orders, and have reached agreement on a comprehensive ESI Protocol designed to promote the just, speedy, and inexpensive determination of this action. The ESI Protocol is

attached as Exhibit A. Entry of the ESI Protocol will streamline discovery, reduce the burden and expense associated with ESI, and minimize disputes by providing clear, uniform procedures and production specifications. The ESI Protocol is tailored to the needs of this case and is consistent with the principles of proportionality set forth in Rule 26(b)(1). Good cause exists for entry of the ESI Protocol. Accordingly, the Parties respectfully request that the Court grant this joint motion and enter the Parties' ESI Protocol. The Parties have contemporaneously submitted a proposed order for this Court's consideration.

Respectfully submitted on April 7, 2026.

By: /s/*Megan W. Murray*
Megan W. Murray
Florida Bar Number 0093922
Scott A. Underwood
Florida Bar Number 730041
Adam Gilbert
Florida Bar Number 1011637
Melissa J. Sydow
Florida Bar Number 39102
UNDERWOOD MURRAY, P.A.
100 N Tampa Street, Suite 2325
Tampa, Florida 33602
Tel: (813) 540-8401 │ Fax: (813) 4553-5345
Email:
mmurray@underwoodmurray.com
sunderwood@underwoodmurray.com
agilbert@underwoodmurray.com
msydow@underwoodmurray.com
*Special Counsel to the Trustee*

By: /s/ Marcos Rosales
Marcos Rosales
TX Bar No. 24074979
(Admitted Pro Hac Vice)
mrosales@beckredden.com
BECK REDDEN LLP
1221 McKinney, Suite 4500
Houston, TX 77010-2010
Telephone: (713) 951-3700

Donald R. Kirk
FL Bar No. 105767
dkirk@carltonfields.com
Ryan Yant
FL Bar No. 104849
ryant@carltonfields.com
CARLTON FIELDS, PA
4221 W Boy Scout Boulevard, Suite 1000
Tampa, FL 33607
Telephone: (813) 229-4334
Facsimile: (813) 229-4133
*Counsel for Defendant American Momentum Bank*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 7, 2026, a true copy of the foregoing has been filed with the Clerk of the Court using CM/ECF and is served on all counsel or parties of record via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/*Megan W. Murray*
Megan W. Murray

# Exhibit A

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

In re:

THE CENTER FOR SPECIAL NEEDS
TRUST ADMINISTRATION, INC.,

    Debtor.

_____

Michael Goldberg, Chapter 11 Trustee

    Plaintiff,

v.

AMERICAN MOMENTUM BANK,

    Defendant.

_____/

Case No. 8-24-bk-00676-RCT

Chapter 11

Adversary Pro. No. 8-26-ap-00015-RCT

**JOINT STIPULATED PROTOCOL RELATING TO THE**
**DISCOVERY OF ELECTRONICALLY STORED INFORMATION**

Pursuant to Rules 16(b) and 26(f) of the Federal Rules of Civil Procedure, the parties to this matter agree to the following protocol governing the identification, preservation, collection, processing, search, review, and production of electronically stored information ("**ESI**") in this action (the "**Protocol**").

**I. Scope.** The following protocol and definitions shall be used in conjunction with the Federal Rules of Civil Procedure, Federal Rules of Evidence, the Local Rules of the United States District Court for the Middle District of Florida, and applicable case law to guide the production of discoverable documents and electronically stored information when production commences.

**a. General.** The procedures and protocols outlined herein govern the production of documents and ESI by all parties to this matter (collectively, the "**Parties**").

**b. Objective.** This Protocol is designed and shall be interpreted to ensure that responsive, non-privileged documents and ESI are produced by the Producing Party with a minimum of unnecessary costs. The terms of this Protocol shall be construed so as to ensure an efficient, predictable, and cost-effective management structure for facilitating the exchange of ESI and hard copy documents. Nothing in this document is intended to be an exhaustive list of discovery obligations or rights of a party producing documents or ESI or the Party requesting the documents or ESI. This Protocol shall not enlarge or restrict the scope of discovery as imposed by the rules governing this matter, court orders, or as agreed to between the Parties.

**c. Limitations and Non-Waiver.** The Parties and their attorneys do not intend by establishing and complying with this Protocol to waive their rights to any protection or privilege, including the attorney-client privilege or the attorney work product doctrine. All Parties preserve their attorney-client, attorney work product, and other privileges and protections, and there is no intent by the Protocol to in any way waive or weaken these privileges and protections. All documents produced hereunder are fully protected and covered by any protective orders entered by the Court in this matter.

**d. Definitions.** The following definitions shall apply:

1. "**Document(s)**" means electronically stored information existing in any medium from which information can reasonably be obtained or translated into reasonably usable form and shall have the same meaning as used in the Federal Rules of Civil Procedure and case law construing the same.

2. "**Native File(s)**" or "**Native Format**" means the format in which documents or files were created or maintained. Native files should be collected, processed and produced in a manner that insures that all files reflect accurate metadata associated

with the creation and maintenance of the files and is not corrupted by the methods of the collection of the data. Nothing herein shall be interpreted to require the review and production of ESI located on back up tapes absent further agreement or Court Order.

**3.** "**Metadata**" herein means broadly any data about data.

**4**. "**Static Image(s)**" means a representation of ESI produced by converting a Native File into a standard image format capable of being viewed and printed on standard computer systems. A Tagged Image File Format (TIFF) image is an example of a Static Image.

**5**. "**Load/Unitization file**" means an electronic file containing information identifying a set of paper-scanned images or processed ESI and indicating where individual pages or files belong together as documents, including attachments, and where each document begins and ends. A Load/Unitization file may also contain data relevant to the individual Documents, including extracted and user created Metadata, coded data, as well as OCR or Extracted Text.

**6**. "**OCR**" means the optical character recognition file which is created by software used in conjunction with a scanner that is capable of reading text-based documents and making such documents searchable using appropriate software.

**7.** "**Extracted Text**" means the text extracted from a Native File and includes all header, footer, and document body information.

**8**. "**Receiving Party**" shall mean the party receiving production of Documents in response to any request for production of document(s) pursuant to Fed. R. Civ. P.

34(a) or pursuant to initial production of documents identified in the party's Rule 26(a) disclosures.

9. "**Producing Party**" shall mean the party producing Documents in response to any request for production of documents pursuant to Fed. R. Civ. P. 34(a) or pursuant to initial production of documents identified in the party's Rule 26(a) disclosures.

**II. Identification of Responsive Documents and ESI**

**a. Custodians/Culling.** The Parties shall exchange in writing a list of custodians, custodial sources, and non-custodial sources most likely to have relevant documents or ESI and shall exchange in writing proposed search terms, or if the parties intend to use TAR (technology assisted review), the parties shall exchange in writing TAR protocols. The Parties shall meet and confer in good faith to agree to a reasonable set of custodians, custodial sources, search terms, if applicable, and non-custodial sources. The Parties shall participate in an iterative and cooperative approach to select custodians and search terms, if applicable. If using search terms, the Parties will provide search term reports to the other Parties to facilitate this iterative process. The Parties shall disclose whether they intend to use technology-assisted review technologies or other culling methodologies as a means of limiting the volume of documents and ESI to be reviewed for responsiveness. The Parties shall meet and confer in good faith regarding the use of technologyassisted review technologies or other culling methodologies.

**b. De-duplication**. Prior to production, the parties shall de-duplicate e-mails according to MD5 hash value at the family level. For clarity, no party should de-duplicate any emails unless they are identified as "family-level hash duplicate."

**c. Parent-Child Relationships.** Parent-child relationships (i.e., the association between an attachment and its parent document) must be preserved if reasonably possible (and to the extent the parent-child relationship is reasonably apparent). For example, electronic documents attached to an email are to be produced contemporaneously and sequentially, immediately after the parent document. If any part of an email or its attachments is responsive, the entire email and attachments will be produced, except for any portions or attachments that must be withheld or redacted on the basis of privilege, immunity, or applicable privacy laws. Additionally, and notwithstanding anything to contrary set forth above, Defendant American Momentum Bank may redact portions or attachments that relate to bank customers who are not related to this matter.[1] By way of example, but not limitation, American Momentum Bank may, in reports that aggregate data pertaining to multiple unrelated bank customers, redact portions or attachments that relate solely to bank customers who are not parties to or otherwise related to this matter. American Momentum Bank will label such redactions as "unrelated bank customer." Where an electronic document that is part of a family is withheld, its relationship to the rest of that document family should be indicated using one Bates-numbered slipsheet for each withheld document.

**III. Production Format**

**a. TIFF/Native File Format Production.** The Parties agree that all non-redacted versions of Excel spreadsheets (or similar spreadsheets created using a different software program), PowerPoint presentations (or similar documents created using a different software program), video messages, and documents with track changes will be produced in native format. All other

---

[1] The Parties agree that this provision is solely intended to protect the private information of bank customers whose irrelevant information is incidentally captured in documents that also contain relevant information regarding accounts that are related to this litigation. The Parties further agree that "related to" shall be interpreted to include, without limitation, all accounts affiliated with the Center for Special Needs Trust Administration, Leo Govoni, John Staunton, or John Witeck (including, but not limited to, every entity listed on Doc. No. 134, Ex. A, in the Bankruptcy Case 8:24-bk-00676-RCT), and agree that information regarding any such accounts will not be redacted under this provision.

documents will be produced as single-page TIFF images with corresponding multi-page text, or in native file format if applicable, and necessary load files. Native files, along with corresponding metadata, will be preserved. TIFF images will be of 300 dpi quality or better. The load files will include an image load file as well as a metadata (.dat) file with the metadata fields identified below on the document level to the extent available. In certain circumstances, variations to the production format specified in this Protocol may be necessary. In such circumstances, the Parties will meet and confer regarding the production format.

b. **Metadata.** No Party has an obligation to create or manually code fields that are not automatically generated by the processing of the ESI, that do not exist as part of the original metadata of the document, or that would be unduly burdensome or costly to obtain. The Parties shall provide the following metadata fields associated with each document produced, to the extent they are reasonably available: Custodian,2 File Path, Email Subject, From, To, CC, BCC, Date Sent, Time Sent, Date Received, Time Received, Filename, Author, Date Modified, Hash Value (such as MD5 or SHA-1), File Size, File Extension, Bates Number Begin, Bates Number End, Attachment Count, Attachment Title, Attachment Range, Attachment Begin, Attachment End (or the equivalent thereof), Redacted, Group ID/Family ID, date and time created ("**Created**" date field), date and time last modified ("**Last Modified**" field), and user who last modified ("**Last Modified By**" field).

c. **Native Files.** The Parties agree that documents will be produced in the format set forth in Section III.a, and that no Party may request or seek to compel the production of ESI in native format on a wholesale basis. Subsequent to the production of documents, however, the Requesting Party may request from the Producing Party that certain imaged files be produced in native format because the files are difficult to read in an imaged form.

**d. Structured Data.** To the extent possible, all exports of structured data or reports from databases will be produced in .csv file, Excel file, or other delimited format.

**e. Hard Copies.** Absent special circumstances, when scanning paper documents, the Parties must take reasonable steps to prevent distinct documents from being merged into a single record, and to ensure that single documents are not split into multiple records (i.e., paper documents should be logically unitized). In addition, scanned paper documents must be produced as they existed in the normal course of business with information that identifies the folder (or container) structure, to the extent such structure exists and to the extent reasonably possible. Hard copy documents are to be produced in single page tiff with accompanying document-level full text and corresponding load files. Load files shall include document source.

**f. SMS Files.** Short message service (SMS) files like text messages, iMessage, WhatsApp, Telegram, Messenger, in-app messages, Slack, Microsoft Teams, Discord, SlickText, multimedia messages, instant messages, rich communication messaging, etc. conversations are to be produced in a database SMS format or a reasonably usable form with metadata.

**g. Document Numbering.** Each page of a produced document will have a legible, unique page identifier ("**Bates Number**") electronically "burned" onto the image at a location that does not obliterate, conceal, or interfere with any information from the source document. The Bates Number for each page of each document will be created so as to identify the Producing Party. In the case of materials redacted or deemed confidential, a redaction or confidentiality designation may be "burned" onto the document's image. The confidentiality designation will be burned onto the document at a location that does not obliterate, conceal, or interfere with any information from the source document.

**h. Claims of Confidentiality.** If the Producing Party produces ESI subject to a claim that it is protected from disclosure under a protective order or confidentiality order entered into by the Parties, the Producing Party shall electronically "burn" the specific level of confidentiality claimed onto each page of the document. Failure to comply with this procedure shall not waive any protection of confidential treatment.

**i. Production Media.** The Producing Party may produce documents via a secure file transfer mechanism or on readily accessible computer or electronic media as the Parties may hereafter agree upon, including external hard drive (with standard PC compatible interface) ("**Production Media**"). All Production Media will be encrypted and the Producing Party will provide a decryption key to the Requesting Party in a communication separate from the production itself.

**IV. Assertions of Privilege**

**a.** To limit the cost of a privilege review and make document production more efficient, the Parties have agreed to adopt the following protocol with respect to handling responsive documents or ESI that may include privileged information.

**1. Communications with Outside Counsel.** The Parties agree that no Party is required to list on a privilege log communications exclusively between a Party and its outside counsel, an agent of outside counsel other than the Party, any non-testifying experts, or with respect to information protected by Federal Rule of Civil Procedure 26(b)(4), testifying experts.

**2. Outside Counsel Work-Product.** The Parties agree that no Party is required to list on a privilege log privileged materials or work product created or received exclusively by its outside counsel, an agent of outside counsel other than the Party, any non-testifying experts, or with respect to information protected by Federal Rule of Civil Procedure

26(b)(4), testifying experts. This provision extends to the attachments of privileged or work product emails.

**3. Redacted Documents.** Redacted documents need not be logged if:

1. the reason for the redaction (e.g., "**attorney-client privilege**" or "**attorney work product**") and any other information that would otherwise appear on a log is noted on the face of the document;

2. the bibliographic information (to, from, subject etc.) is not redacted; and

3. the Producing Party provides the metadata identified in Section III.b for each redacted document.

**b**. Parties shall generate a listing of all other withheld or redacted documents and ESI in electronic spreadsheet format identifying the information described in Federal Rule of Civil Procedure 26(b)(5). The listing shall include:

**1**. The nature of the protection being asserted;

**2**. The date the document was created or sent;

**3**. The document's format (e.g., email, docx, pdf);

**4**. The document's author and recipients;

**5**. A description sufficient to identify the document's subject matter and purpose; and

**6.** The document's present location and custodian.

**c**. To the extent applicable, each Party's privilege log only needs to provide objective metadata as described in Section IV.d (to the extent it is reasonably available and does not reflect privileged or protected information), and an indication of the privilege or protection being asserted.

**d**. The Privilege Log should include the following fields Privilege: Log Number, Family ID, Attachment Count, Sent Date, From, To, CC, BCC, Subject, File Extension, Document Type,

Privilege Claim, Privilege Subject Matter, Filename, All Custodians, Created Date, Last Modified, Last Edited By, Author, and Filepath.

**e**. Any inadvertent disclosure or production of Privileged ESI will not constitute a waiver of any such privilege by the disclosing Party. In the event that the Receiving Party discovers that it has received Privileged ESI, it will immediately notify the Producing Party. Upon request of the Producing Party, the Receiving Party will promptly destroy or return to the Producing Party any Privileged Documents so identified and represent that such destruction has been completed (or explain the extent to which such destruction was not completed if not feasible). The Producing Party shall provide a privilege log for the inadvertently produced documents within 10 days of being notified that the inadvertently disclosed documents have been destroyed. The Receiving Party will not introduce the Privileged ESI as evidence in this proceeding or any other case, proceeding or action, and will not otherwise use or disseminate the Privileged ESI for any reason, including to argue that there has been a waiver of any privilege as a result of the manner in which the Privileged ESI was produced.

**V. General Provisions**

**a. Discoverability and Admissibility.** This Protocol does not address, limit, or determine the relevance, discoverability, agreement to produce, or admissibility of ESI. Nothing in this Protocol shall be construed to affect the admissibility of any document or data. All objections to the discoverability or admissibility of any document or data are preserved and may be asserted at any time.

**1.** This Protocol does not imply that discovery produced under the terms herein is properly discoverable, relevant, or admissible in this or in any other litigation.

**2**. Additionally, nothing in this Protocol shall be deemed to waive or limit any Party's right to object to the production of certain electronically stored information, or to move for an appropriate order on the ground that the sources are not reasonably accessible.

**b. Modification.** To the extent compliance with this Protocol imposes an undue burden with respect to any procedure, source, or search term listed herein, if applicable, the Parties shall promptly confer meaningfully, in a good-faith effort to resolve the issue. Any practice or procedure set forth herein may be varied by agreement of the Parties, which will be confirmed in writing, where such variance is deemed appropriate to facilitate the timely and economical exchange of electronic data. Any Party that seeks to deviate from or exceed the discovery limits set forth herein must obtain leave of the Court to do so unless all Parties otherwise consent in writing.

**c. Dispute Resolution.** The Parties will attempt to resolve disputes regarding the issues set forth herein prior to filing a motion with the Court or otherwise seeking relief. If the Parties are unable to resolve the dispute after a good faith effort, the Parties may seek Court intervention in accordance with the Court's procedures.

**d. Costs.** Each Party will be responsible for its own production costs unless otherwise ordered by the Court.

**e. Retention.** The Parties agree to take all reasonable steps to ensure that relevant ESI is not permanently deleted in the ordinary course of business, nor that it is altered.