ORDERED.

**Dated:  June 23, 2026**

Roberta A. Colton
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:

The Center for Special Needs                                   Case No. 8:24-bk-00676-RCT
Trust Administration, Inc.,                                     Chapter 11
            Debtor.
_____/

Michael Goldberg, *on behalf of* Javier
Perales; Michael Passino *on behalf of*                         Adv. No. 8:25-ap-00347-RCT
Allison Passino; and John Griffith *on
behalf of* Jackson Griffith, individually
and on behalf of all others similarly situated,
            Plaintiffs,

v.

American Momentum Bank,
            Defendant.
_____/

Michael Goldberg, as Chapter 11 Trustee,                        Adv. No. 8:26-ap-00015-RCT
            Plaintiff,

v.

AMERICAN MOMENTUM BANK,
            Defendant.
_____/

**ORDER (I) GRANTING IN PART MOTION TO COMPEL PRODUCTION OF
DOCUMENTS AND (II) DENYING MOTION TO COMPEL RESPONSES**

THIS PROCEEDING was considered at a hearing on June 23, 2026, on two motions:

(1) Plaintiffs' Motion to Compel Production of Documents (Docs. 37, 102), which Defendant

opposes (Docs. 40, 109), and (2) Defendant's Motion to Compel Plaintiffs' Responses to Defendant's First Set of Interrogatories (Doc. 103), which Plaintiffs oppose (Doc. 108).[1]  As explained below, the Court grants in part Plaintiffs' motion and denies Defendant's motion, without prejudice.

## I.  Background

Two sets of Plaintiffs have filed adversary complaints against Defendant American Momentum Bank ("the Bank").   The first adversary complaint (Adv. No. 8:25-ap-00347-RCT) was filed by Plaintiffs, on behalf of beneficiaries of special needs trusts ("SNTs") administered by Debtor The Center for Special Needs Trust Administration, Inc. ("the Center").  In the first proceeding, Plaintiffs allege that the Center deposited their SNT funds at the Bank for safekeeping.  However, instead of guarding the funds, Plaintiffs contend that the Bank facilitated a decade-long fraud and theft scheme by which Leo Govoni, former director of the Center, siphoned $100 million from the SNT accounts for his own personal benefit.  This was done via a purported loan of the Center's funds to Govoni's company, BFG.  These Plaintiffs assert one claim against the Bank—that it aided and abetted the Center's breach of fiduciary duty to the SNT beneficiaries.

The second adversary complaint (Adv. No. 8:26-ap-00015-RCT) was filed by Plaintiff Michael Goldberg, as Chapter 11 Trustee of the Center, based on the same set of facts.  In this case, Plaintiff asserts seven claims against the Bank: Count I: aiding and abetting Govoni's breach of fiduciary duty to the Center, Count II: breach of fiduciary duty by the Bank, Count III: avoidance of improperly paid account fees pursuant to 11 U.S.C. § 544 and recovery under 11

---

[1] Plaintiffs' motion and Defendant's response thereto were filed in both adversary proceedings—Docs. 37 and 40 in Adv. No. 8:26-ap-00015-RCT; Docs. 102 and 109 in Adv. No. 8:25-ap-00347-RCT. Defendant's motion and Plaintiffs' response thereto was only filed in Adv. No. 8:25-ap-00347-RCT.

U.S.C. § 550, Count IV: objection to the Bank's proof of claim, Count V: equitable subordination of the Bank's claim, Count VI: breach of the ACH agreements, and Count VII: breach of implied in fact contract.

## II.  Standard of Review

Federal Rule of Civil Procedure 26(b)(1) sets forth the scope of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.[2]

Furthermore, Federal Rule of Civil Procedure 37(a)(3)(B) provides, in relevant part, that a party seeking discovery may move for an order compelling a response or production of documents.[3]  The movant bears the initial burden of proving that the information sought is discoverable.[4]  A party opposing discovery must establish that the information sought is not relevant or that it would be unduly burdensome to supply.[5]

## III.  Plaintiffs' Motion to Compel Production

Plaintiffs seek to compel production of two categories of documents: (1) the personnel files for three Bank employees (Sherry Lilly, Karen Jones, and Sandy Green) who are named in the adversary complaints, identified in the Bank's initial disclosures, and have been identified

---

[2] Fed. R. Civ. P. 26(b)(1).  Rule 26 is made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7026.

[3] Rule 37 is made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7037.

[4] *See Kelley v. Allegiant Air, LLC*, 2024 WL 665099, at *1 (M.D. Fla. Feb. 16, 2024) (citation omitted).

[5] *See id.* (citations omitted).

by Plaintiffs as being first-wave deponents; and (2) the non-custodial SBA/PPP loan underwriting files.

### A.  Personnel Files

Plaintiffs seek to compel the production of the personnel files for three Bank employees—Sherry Lilly, Karen Jones, and Sandy Green.  Specifically, Plaintiffs seek three types of employee information from these files: (1) their training history regarding opening accounts, vetting clients, and maintaining client records; (2) their bonus/compensation structure (such as whether they received bonuses for maintaining high value customers, like the Center and the other Govoni-related entities); and (3) their performance evaluations and disciplinary history.  Plaintiffs contend that these three Bank employees communicated regularly with the Center's employees and with Govoni's other employees, had a wealth of knowledge relating to the Center and to Govoni's other businesses, and executed many of the transactions at issue here. As such, Plaintiffs contend that the information sought bears directly on the Bank's "actual knowledge" and "substantial assistance," as well as its financial motives for supporting Govoni's scheme.

The Court agrees with Plaintiffs that the information contained in these three employees' personnel files should be produced.  To the extent that the Bank raises privacy concerns, Plaintiffs have made clear that they do not seek irrelevant private information relating to employees' health conditions, insurance benefits, Family Medical Leave Act materials, or documentation of inconsequential matters like tardiness or absence.  Therefore, the Court will grant Plaintiffs' motion with respect to these three personnel files with two caveats: (1) the production will be subject to a negotiated confidentiality agreement, and (2) all personally identifiable information (such as Social Security numbers) must be redacted.

### B.  SBA/PPP Loan Underwriting Files

Plaintiffs also seek to compel the production of the non-custodial SBA/PPP loan underwriting files. Specifically, Plaintiffs seek the loan documents, the underwriting files, and communications between the Bank and Govoni and his entities, as well as internal communications within the Bank, regarding the loans.  Plaintiffs argue that these materials are directly relevant to the issue of whether the Bank had knowledge and concerns regarding the finances and transactions of the Center and the Govoni-related entities, yet nevertheless continued providing banking services to these companies, which perpetuated the SNT beneficiaries' losses.

Again, the Court agrees with Plaintiffs that the loan documents and underwriting files should be produced.  However, the Court finds that at this time, Plaintiffs have not shown that the Court should compel production of the communications surrounding the loans.  It is assumed that relevant internal communications involving the Govoni-related accounts at the Bank are already the subject of discovery and have or will otherwise be produced.

### IV.  The Bank's Motion to Compel Responses

The Bank moves to compel Plaintiffs' responses to its first set of interrogatories. Specifically, the Bank moves to compel Plaintiffs to identify two main things: (1) each transaction, transfer of funds, and/or payment by the Center that Plaintiffs contend was a breach of fiduciary duty by the Center; and (2) each transaction, transfer of funds, and/or payment by the Center that funded the $100 million loan to BFG.  Furthermore, the Bank asks Plaintiffs to provide the date of each transaction, the amount, the receiving party, the financial institutions transferring and receiving the funds, and identifying transaction information (such as check number or wire transfer number).

### A.  Breaches of Fiduciary Duty

The Bank asks the Court to compel Plaintiffs to identify each transaction, transfer of funds, and/or payment by the Center that Plaintiffs contend was a breach of fiduciary duty by the Center.  Plaintiffs' response is not needed to answer this question.  The complaints make clear that Plaintiffs are claiming that all transfers of funds from the Center's Bank accounts to non-Center, Govoni-related accounts were breaches of the Center's fiduciary duty to the SNT beneficiaries.  These transactions can be found within the Bank's own account records for these entities.

Accordingly, the Court denies the Bank's motion without prejudice on this issue.  To the extent that the interrogatory seeks a damages analysis, that information can be obtained as part of the expert discovery anticipated at the later stage of these proceedings.  This ruling does not prejudice the Bank from seeking details at that stage of the litigation.

### B.  BFG Loan

The Bank also asks the Court to compel Plaintiffs to identify all the transactions by the Center to fund the BFG loan.  Again, Plaintiffs' response is not needed to answer this question. The complaints make clear that Plaintiffs are claiming that all transfers of funds from the Center's Bank accounts to BFG's account were made to fund the BFG "loan," as there was no reason for the Center to be transferring SNT funds to BFG or any other Govoni-controlled entity. Again, the Center's accounts and BFG's account were held at the Bank, and as such, it has access to the information it seeks.  Thus, the Court denies the Bank's motion on this issue.

## V.  Conclusion

Accordingly, it is ORDERED that:

(1)     Plaintiffs' Motion to Compel Production of Documents (Doc. 102) is **GRANTED in part and DENIED in part**: The motion is **GRANTED** to the extent that the personnel files requested shall be produced with the confidentiality and privacy conditions discussed above.  The SBA/PPP loan documents and underwriting files shall also be produced. The motion is **DENIED** to the extent of the communications surrounding the SBA/PPP loans.

(2)     Defendant's Motion to Compel Plaintiffs' Responses to Defendant's First Set of Interrogatories (Doc. 103) is **DENIED, without prejudice.**

Service via CM/ECF