**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

In re: Case No. 8-24-bk-00676-RCT

THE CENTER FOR SPECIAL NEEDS TRUST ADMINISTRATION, INC., Chapter 11

Debtor.

---

Michael Goldberg, Chapter 11 Trustee Adversary Pro. No. 8-26-ap-00015-RCT

Plaintiff,

v.

AMERICAN MOMENTUM BANK,

Defendant.

_______________________________________/

**CHAPTER 11 TRUSTEE'S RESPONSE TO**
**AMERICAN MOMENTUM BANK'S MOTION TO DISMISS AMENDED COMPLAINT**
(Doc. 56)

Plaintiff, Michael Goldberg, in his capacity as Chapter 11 Trustee ("**Trustee**") of the bankruptcy estate of The Center for Special Needs Trust Administration, Inc., files his Response to American Momentum Bank's ("**AMB**" or the "**Bank**") Motion to Dismiss (Doc. 56) ("**Motion to Dismiss**") the Trustee's Amended Complaint ("**Complaint**") (Doc. 50)[1] and in support thereof states:

## SUMMARY OF ARGUMENT

The bulk of the Bank's Motion to Dismiss is based on a misrepresentation of the claims advanced in Count VI of the Amended Complaint or simply ignoring the clear and plain statements asserted by the Trustee. The Bank's own ACH Agreement provides, and the Trustee has similarly

---

[1] All paragraph ¶ symbols referenced below refer to the Complaint unless otherwise noted.

alleged, the Bank will adhere to NACHA rules in providing "Services" to the Center, including enabling the Center to initiate credit and debit entries through the Bank to accounts at the Bank and other depository financial institutions. Both the Bank and the Center signed the ACH Agreement agreeing to be bound by its terms. The Bank also concedes the ACH Agreement provides for liability from breaches stemming from the Bank's grossly negligent conduct as alleged in the Amended Complaint.

As to Count III, the Trustee may step into the shoes of the Internal Revenue Service ("**IRS**") and apply a ten (10) year look back period because there are still unassessed pre-petition tax years as disclosed in the IRS's Proof of Claim. Rather than precluding the Trustee's ability to utilize the IRS as a triggering creditor, the amount or existence of currently unknown liabilities is a factual matter to be determined at trial. The Motion to Dismiss should be denied for these reasons.

## I. Legal Framework

The Court employs Fed. R. Civ. P. 12(b)[2] to evaluate the sufficiency of the Complaint, accepting all factual allegations as true *and* construing them in the light most favorable to the Trustee. *Otto Candies, LLC v. Citigroup Inc*., 137 F.4th 1158, 1177 (11th Cir. 2025) (citation omitted). The standard provides that AMB is entitled to notice through a short and plain statement of claims against it and the grounds on which they rest, showing that the Trustee is entitled to relief. The Amended Complaint need not 'prove' the Trustee's case, but merely assert enough factual allegations, taken as true, to raise the Trustee's right to relief above the speculative level of possibility, to that of plausibility. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007).

When reviewing the *Trustee's* allegations, and taking them as true,[3] the Court will find he

[2] Applicable to bankruptcy proceedings by Fed. R. Bank. Pro. 7012(b).
[3] To the extent the Court believes any element of the Bank's own ACH Agreement is unclear, any contractual ambiguity should be determined at this stage in favor of the Trustee. *Bordelon Marine, LLC v. ETRAC, Inc.*, 528 F. Supp. 3d 1280 (S.D. Fla. 2020).

has met his burden. The Complaint goes beyond ‘naked assertions’ and lays out factual support for each of the Trustee’s claims showing liability is plausible.

## II. ARGUMENT

### A. The Amended Complaint Plausibly Alleges a Breach of the ACH Agreement Due to the Bank’s Failure to Comply with NACHA Rules.

The Trustee has alleged broken promises the Bank made in the ACH Agreement, specifically a failure to comply with NACHA rules requiring the bank to provide services and process transactions in accordance with NACHA rules, not act in a grossly negligent manner, and properly implement monitoring systems.[4] Ultimately the Court will be the arbiter of whether the Bank broke its promises and caused over $100,000,000 of damages. At this pleading stage, the allegations in the Complaint are sufficient.

#### a. The Bank Agrees to be Bound to NACHA Rules in the ACH Agreement

A plain reading shows the Bank agreed to be bound by NACHA rules under the ACH Agreement (see ACH Agreement section 1, ACH Training for originators, Exhibit E, at 21 of 46 (all ACH Originators [like AMB] must comply with NACHA rules)). The preamble to the ACH Agreement states AMB will provides “services” described by the ACH Agreement to process, transmit, and settle “entries” as provided in “the [NACHA] Rules.” The preamble explicitly notes “[c]ustomer wishes to initiate credit and/or debit entries through Financial Institution to accounts maintained at Financial Institution and in other financial institutions by means of the Automated Clearing House Network (“ACH”) and pursuant to the terms of this Agreement and the rules of the National Automated Clearing House Association” (Complaint Ex. I, pg. 2). The very purpose of the ACH Agreement evidences a clear intent by the Bank to incorporate the NACHA Rules and

---

[4] To state a claim for breach of contract under Florida law, the Trustee must allege (1) the existence of a valid contract; (2) a material breach; and (3) damages. *Beck v. Lazard Feres & Co, LLC*, 175 F.3d 913, 914 (11th Cir. 1999).

be bound by them under the ACH Agreement. The Bank's argument—that the ACH Agreement only binds the customer to NACHA rules—is incredulous. Such language is more than sufficient to demonstrate the Bank's intent to incorporate the NACHA Rules. For example, in *Azure College, Inc. v. Bank of America, N.A.*, 629 F. Supp.3d 1200, 1208 (S.D. Fla. 2022), the district court held that a deposit agreement incorporated the NACHA Rules where the contract provided "for each ACH transaction, [customer] agree[s] that the transaction is subject to the [NACHA Rules]… and any local ACH operating rules then in effect." Similar to the instant language, the NACHA reference facially spoke to the customer only (because the bank is already bound). Such language was sufficient to qualify as incorporation into the contract for all parties.

Further evidencing AMB's express intent to incorporate the NACHA Rules is AMB's explicit agreement to act as an Originating Depository Financial Institution ("**ODFI**"). Exhibit I at 2. An ODFI is an explicitly defined term in the NACHA Rules that has accompanying obligations and responsibilities imposed by NACHA Rules, such as conducting risk assessments of its ACH activity.[5] The Bank's explicit agreement to act as an ODFI is a knowing and explicit acknowledgment of its intent to undertake the duties of an ODFI as prescribed under the NACHA Rules.

The ACH Agreement merely provides notice to the Customer that it too accepts and agrees to all terms provided by the ACH agreement and NACHA. The statement in the ACH Agreement that Customer agrees to be bound is simply *adding* parties agreeing to be bound.[6]

**b. The Bank's ACH and "On-Us" Arguments Highlight the Bank's Breaches of the NACHA Rules,**

There is no dispute that an "On Us" transaction is a transfer of funds where the originator

[5] Discussed *infra*.

[6] By agreeing to act as an ODFI, the Bank had already agreed to be bound by the NACHA Rules. *See e.g., NACHA Rules 8.70* and *8.76*.

and recipient accounts are located at the same financial institution. See Complaint at ¶ 343; *NACHA Operating Guidelines Section II, Ch. 5.* ACH Agreement Section 14. The Complaint alleges AMB agreed that NACHA rules were incorporated into the ACH Agreement, and that it would act as both "the ODFI and RDFI[7] for the [on-us] transaction[s]." *NACHA Operating Guidelines, Section I, Chapter 3, OFAC Compliance and Obligations, "Origination of Entries."*[8] *(*explaining that in an "on-us" transaction, the ODFI is also acting as the RDFI for the transaction) Complaint at ¶ 335.

As the ODFI for "On Us" entries, the Bank was required to implement a tailored risk management program after assessing its activities. *NACHA Rule 1.2.4*. Additionally, the Bank was required to assess the nature and risk of an originator's ACH activity and to "establish, implement, and periodically review an exposure limit for the [o]riginator." *NACHA Rule 2.2.3*. Complaint, at ¶¶ 337 and 338. The Trustee's Complaint argues the Bank failed to do so. Complaint at ¶ 340-352.

AMB does not refute the fundamental NACHA failings, but argues "the ACH Agreements have nothing to do with non-ACH "On Us" transactions" and the Bank was not required to include On Us transactions in a comprehensive risk management program. The Complaint plausibly states otherwise.

The term "Entry" means as provided in the "Rules"[9] "and shall also mean data received from Customer hereunder from which Financial Institution initiates each Entry." ACH Agreement

---

[7] An "RDFI" is a receiving depository financial institution. *See e.g., NACHA Operating Rules Section 8.87*.

[8] "The ODFI should also recognize that when unbundling batches to remove "on us" transactions from files received for processing from an Originator, it is acting as both the ODFI and the RDFI for the transaction. As such, the ODFI will be responsible for OFAC compliance with respect to both the Originator and Receiver of the on-us transaction." *NACHA Operating Guidelines, Section 1, Chapter 3, OFAC Requirements and Obligations.*

[9] "Rules" refers to both the NACHA Operating Rules and the Financial Institution's own operating rules and procedures for electronic entries. See ACH Agreement at page 1.

at 1 ("data" is not a defined term and has broad general meaning of an amalgamation of information). Section 17 of the ACH Agreement illustrates that On Us Entries includes ACH and non-ACH entries, noting if AMB receives a request to cancel an "Entry" before the Entry has been transmitted to the ACH (*or in the case of an On-Us Entry, before the receiver's account has been creditor or debited…"*).

In simple terms, the Complaint plausibly alleges that all types of transactions listed in the ACH Agreement are covered by NACHA rules, the Bank failed to implement NACHA rules in overseeing and administering the banking activity covered by the ACH Agreement, resulting in liability. As a result, AMB was required to consider ACH and non-ACH transactions as part of its risk management program. ¶¶ 333-340.

The Complaint provides examples of "On Us" transactions from the Center to BFG covered under the ACH Agreement and NACHA Guidelines. Complaint at ¶¶ 344-346 (alleging nearly $17,000,000 in On Us transactions occurred between 2010-2012 and that the Bank ignored On Us transactions between Govoni related accounts when considering risk).[10] *See 2026 NACHA Operating Guidelines, Section II, Chapter 5* and *Section I Chapter 3*. The Trustee alleges the Bank failed to consider these "On Us" transfers in its audit or alert histories, even though it had this information at its fingertips (Complaint at ¶ 130, 340-346) and that the Bank's contractual failures remained ongoing. *See e.g.* Complaint at ¶ 348. The Trustee has asserted more than sufficient factual allegations to establish the existence of the ACH Agreement (which covered On Us Entries), a contractual duty to implement proper risk analysis of all transactions covered by the ACH Agreement, including On Us Entries, and a failure to do so, causing extensive damages.

[10] "Ongoing nonperformance can constitute a continuing breach while a contract remains in effect, so that the accrual of a cause of action for breach of contract is not limited to the [party's] initial breach" *Raffay v. Longwood House Condominium Association, Inc.*, 389 So.3d 589, 592 (Fla. 3rd DCA 2023)(internal citation and quotation omitted)(alteration in original).

Complaint, at ¶¶ 335-354.

**c. The Trustee's Claim is for Breach of Contract, Not a Stand Alone Violation of the NACHA Rules.**

The Bank's ACH Agreement explicitly incorporates NACHA rules (ACH Agreement preamble); (Complaint at ¶ 335). The Bank agreed to provide "Services" to the Center, as outlined in the ACH Agreement (ACH Agreement preamble). Trustee alleges the Bank broke that promise. Complaint, at ¶¶ 335-354. The estate is entitled to prove the damages that flow from these breaches at summary judgment or trial. See Complaint at ¶ 354 (alleging damages). *See e.g. Security First Network Bank v. C.A.P.S., Inc.*, 2002 WL 485352, *5-6 (N.D. Ill. Mar. 29, 2002) (denying motion to dismiss claim for breach of warranty contained in NACHA Rules where rules were incorporated into a contract between the litigants); *See e.g. Azure College Inc.*, 629 F. Supp.3d at 1207-09 (reviewing whether NACHA Rules were violated on summary judgment to rule on breach of contract claim).

AMB's citation to *Clinton Plumbing and Heating* does not change the simple analysis. *Clinton Plumbing and Heating* involved a claim for breach of warranty under NACHA Rules, <u>not</u> a claim for a breach of a contract that incorporated NACHA Rules. *See Clinton Plumbing and Heating of Trenton, Inn., v. Ciaccio*, 2010 WL 4224473, *9 (E.D. PA. Oct. 22, 2010) ("Plaintiffs do not have standing to raise a **breach of warranty claim pursuant to NACHA Rules**")(emphasis added). *Clinton Plumbing* simply has no bearing on the Trustee's ability to bring a **<u>breach of contract</u>** claim. Trustee's standing to sue directly under the NACHA Rules is not a problem in this case which asserts a claim for breach of the ACH Agreement between the Bank and the Center. Here, Plaintiff's standing arises due to the independent contractual privity between the Bank and the Center, both of which executed the ACH Agreement and agreed to be bound by its terms and conditions, including those incorporated by reference.

**d. The Bank's Gross Negligence Permits Recovery Under the ACH Agreement.**

The Amended Complaint alleges that the Bank's breach of the ACH Agreement was the result of the Bank's (1) failure to include "On Us" transactions in audits and alert histories (¶ 346); (2) either turning a blind eye to or failing to actually receive requested financials to permit compliance with the Bank's obligations (¶ 130); and (3) regularly making exceptions to the Bank's policies to accommodate the Govoni's requests (¶¶ 143 and 350). Such conduct rises to the level of gross negligence and willful misconduct.[11]

The Complaint alleges that the Bank and Center entered into an ACH Agreement whereby the Bank agreed to provide "Services" in a manner that were not grossly negligent. See ACH Agreement section 27: "FINANCIAL INSTITUTION SHALL BE RESPONSIBLE ONLY FOR PERFORMING THE SERVICES EXPRESSLY PROVIDED FOR IN THIS AGREEMENT, AND SHALL BE LIABLE ONLY FOR ITS GROSS NEGLIGENCE OR WILLFUL MISCONDUCT IN PERFORMING THOSE SERVICES…FINANCIAL INSTITUTION SHALL BE LIABLE FOR CUSTOMER'S ACTUAL DAMAGES DUE TO CLAIMS ARISING SOLELY FROM FINANCIAL INSTITUTION'S GROSS NEGLIGENCE OR WILLFUL MISCONDUCT." (emphasis added as underline).

The Complaint alleges that failing to do so, the Bank breached the ACH Agreement, resulting in damages. Therefore, the Trustee has alleged sufficient facts to state a claim for breach of the ACH Agreement due to the Bank's grossly negligent, if not willful violation of the NACHA

[11] Under Florida law, gross negligence requires "(1) circumstances constituting an imminent or clear and present danger amounting to a more than normal usual or peril, (2) knowledge or awareness of the imminent danger on the part of the tortfeasor and (3) an act or omission that evinces a conscious disregard of the consequences. *Electric Boat Corporation v. Fallen*, 343 So.3d 1218, 1220 (Fla. 5th DCA 2022). While willful misconduct under Florida law requires "conduct of a quasi-criminal nature, the intentional doing of something either the with the knowledge that it is likely to result in serious injury, or with a wanton and reckless disregard of its probable consequences." *Gregory v. McKesson & Robbins*, 54 So.2d 682, 686 (Fla. 1951).

Rules, which were some of the services the Bank agreed to provide under the Agreement.

### B. AMB Does Not Dispute That the Trustee Has Properly Alleged a Claim Under § 544, It Only Disputes the Ten (1) Year Lookback.

The Trustee has properly alleged triggering creditors (the estate Beneficiaries) which will allow a four (4) year look back under Count III. The only argument raised in the Bank's Motion to Dismiss regarding Count III is whether the Trustee may reach back 10 years or 4 years to recover fraudulent transfers received by the Bank. Contrary to the Bank's position, case law provides the Trustee may utilize the IRS as a triggering creditor, notwithstanding the amount listed in the IRS's proof of claim, because in this specific case, the IRS filed a proof of claim *subject to modification*. If the IRS modifies its claim, the estate may 1) dispute the claim and 2) look back 10 years.

"[T]he lack of an assessment does not prevent the IRS from holding a claim which may serve as the foundation for the Trustee's use of 11 U.S.C. § 544(b) to invoke the IRS' extended statute of limitation." *In re Polichuk*, 506 B.R. 405, 428 (E.D. Pa. 2014).[12] The Trustee has alleged that the IRS may have additional or amended claims based on the newly disclosed financial dealings of the Center (i.e., the bankruptcy, misuse of funds, and potentially inaccurate tax reporting). *See* Complaint at ¶ 295.[13] Additionally, the proof of claim filed by the IRS explicitly states that the FUTA tax for 2023 has not yet been assessed and the tax liability may be amended upon assessment. It is a regular occurrence that the IRS assesses liability after its initial proof of claim is filed.

Contrary to the Bank's argument, the amount of the IRS's tax liability is simply a fact that

[12] As explained by the *Polichuk* court, "it is not the assessment, but the statutory obligation to account for, collect, or pay the tax due, that gives rise to tax liability." *Polichuk*, 506 B.R. at 427.

[13] The IRS has three years to assess an underpayment of taxes, pulling at minimum, the 2023 and 2024 tax years as subject to adjustment. *See Polichuk*, 428 B.R. at 428 ("By January 2008, when the Debtor filed this bankruptcy case, the general three (3) year limitation on an assessment for any underpayment of tax had passed for all of the tax years … on which the Trustee bases her argument").

the Trustee will prove at trial. *See Polichuk*, 506 B.R. at 428 (noting "if the IRS has not made an assessment, tax liability may be established by a judicial proceeding, so long as the applicable assessment period has not run.").[14] Therefore, while the Bank (and even the estate) may dispute that additional amounts are owed to the IRS, when the Trustee's allegations are taken as true, the Trustee steps into the shoes of the IRS and may reach back 10 years to avoid fraudulent transfers to the Bank. If no additional assessments are alleged, the Trustee is still entitled to a four-year lookback triggered by the estate's other creditors.

The allegations in the Complaint are sufficient to allow the Trustee to utilize the 10 year lookback period under Count III due to the existence of unassessed taxes. In any event, a 4- year lookback is properly alleged through the estate's triggering creditors, the Beneficiaries. Likewise, the well plead allegations of the Complaint establish that the Bank breached the ACH Agreement by failing to comply with the NACHA Rules incorporated therein and binding on both parties giving rise to breaches for willful misconduct and gross negligence in providing services. Therefore, for the reasons set forth above, the Motion to Dismiss should be denied.

WHEREFORE, based on all the foregoing reasons as alleged in the Complaint, the Trustee requests that the Court deny AMB's Motion to Dismiss.

Respectfully submitted on August 24, 2026.

By: /s/*Megan W. Murray*
Megan W. Murray
Florida Bar Number 0093922
Scott A. Underwood
Florida Bar Number 730041
Adam Gilbert
Florida Bar Number 1011637
Melissa J. Sydow
Florida Bar Number 39102

---

[14] "Generally, the IRS must assess a tax liability within three (3) years of the date when the income tax return was filed, "whether or not such return was filed on or after the date prescribed." *In re Polichuk*, 506 B.R. at 428 (citing 26 U.S.C. § 6501(a)).

UNDERWOOD MURRAY, P.A.
100 N Tampa Street, Suite 2325
Tampa, Florida 33602
Tel: (813) 540-8401 | Fax: (813) 4553-5345
mmurray@underwoodmurray.com
sunderwood@underwoodmurray.com
agilbert@underwoodmurray.com
msydow@underwoodmurray.com
*Special Counsel to the Trustee*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 24, 2026, a true copy of the foregoing has been filed with the Clerk of the Court using CM/ECF and is served on all counsel or parties of record via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/*Megan W. Murray*