**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

In re: Case No. 8-24-bk-00676-RCT

THE CENTER FOR SPECIAL NEEDS
TRUST ADMINISTRATION, INC., Chapter 11

Debtor.
_______________________________________

Michael Goldberg, Chapter 11 Trustee Adversary Pro. No. 8-26-ap-00015-RCT

Plaintiff,

v.

AMERICAN MOMENTUM BANK,

Defendant.
_______________________________________/

**DEFENDANT AMERICAN MOMENTUM BANK'S REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT (DKT. 50)**

## INTRODUCTION

In substance, Plaintiff's response does nothing more than ask the Court to reconsider its prior dismissal order regarding Plaintiff's breach of contract and avoidance claims. The Court dismissed the contract claim because "Plaintiff has not identified any of Govoni's transactions that were effectuated through ACH, as opposed to some other transfer mechanism," and it dismissed the avoidance claim based on the IRS's ten-year lookback period because "the IRS cannot be used as a triggering creditor in whose shoes Plaintiff may stand," given that "the IRS filed an amended proof of claim for $0." Dkt. 41 at 22-23. Plaintiff filed an amended complaint with window-dressing, but the relevant allegations and judicially noticeable facts are unchanged—Plaintiff still does not allege that any Govoni transactions were effectuated through ACH, and the IRS's proof of claim is still $0. Plaintiff does make some new legal arguments in his response, but as explained below, these arguments all fail. Accordingly, the Court should decline Plaintiff's ill-disguised invitation to reconsider its prior dismissal order and instead grant AMB's motion to dismiss.

## ARGUMENT

### I. The Court should dismiss Plaintiff's breach of contract claim.

#### A. Plaintiff makes several effective concessions that allow the Court to easily dismiss Plaintiff's claim that AMB violated the ACH Agreements' provisions relating to the NACHA Rules and "On Us Entries."

AMB moved to dismiss Plaintiff's claim that AMB breached the ACH Agreements on a variety of grounds. *See* Dkt. 56 at 3-10. Plaintiff responds to some of these arguments, and those responses will be discussed below. However, Plaintiff entirely fails to respond to four crucial arguments. Taken together, these four effective concessions provide sufficient grounds to dismiss Plaintiff's claim that AMB violated the ACH Agreements' provisions relating to the NACHA Rules and "On Us Entries"—without the Court having to consider Plaintiff's other arguments on these issues. Accordingly, AMB begins its response by discussing these concessions.

First, AMB pointed out in its motion that (1) "the Court previously found that 'dismissal of [the contract] claim is warranted because Plaintiff has not identified any of Govoni's transactions that were effectuated through ACH, as opposed to some other transfer mechanism" and (2) "Plaintiff's new Complaint does not remedy this deficiency." Dkt. 56 at 5 (quoting Dkt. 41 at 23). In response, Plaintiff does not identify a single complained-of transaction effectuated through ACH. *See generally* Dkt. 66 at 3-9. Thus, it is undisputed that the alleged transactions underlying Plaintiff's claim that AMB breached the ACH Agreements are *not* ACH transactions.

Plaintiff attempts to avoid this problem by asserting that the ACH Agreements' reference to "On Us Entries includes ACH and non-ACH entries." Dkt. 66 at 6. Nonsense. A thorough review of the ACH Agreements, Dkt. 50-9, demonstrates that the Agreements relate to ACH transactions and *only* ACH transactions. Plaintiff cannot satisfy his Rule 8 obligation by alleging a claim contradicting the very agreement upon which the claim depends.[1] But regardless, as AMB argued in its motion, "even if 'On Us Entries' did include non-ACH transactions (which it does not), Plaintiff still has not alleged that AMB breached the ACH Agreements with respect to such transactions" because "[t]he provisions in the ACH Agreements concerning 'On Us Entries' that Plaintiff cites only concern the date on which 'Financial Institution shall credit the Receiver's account' when such transactions occur; they say nothing about including those transactions in a risk management program or otherwise provide that the NACHA Rules apply to such transactions." Dkt. 56 at 9 (quoting Dkt. 50 at ¶ 343).[2]

---

[1] Plaintiff's reliance on Section 17 of the ACH Agreements, *see* Dkt. 56 at 6, is no help. Section 17 deals with the cancellation or amendment of ACH Entries and, unremarkably, establishes a different cutoff time for an "On-Us Entry" ("before the Receiver's account has been credited or debited") than for other ACH transactions ("before the affected Entry has been transmitted to the ACH"). *See* Dkt. 50-9 at 6. While the Bank generally loses "control" of ACH Entries once they are transmitted to the Automated Clearing House, the Bank has more time to amend On-Us ACH Entries because the Receiver's account also resides at AMB.

[2] The intellectual bankruptcy of Plaintiff's position is further demonstrated by the fact that "Receiver" is itself a term defined by the NACHA Operating Rules as "a Person that has authorized an Originator to initiate a credit Entry, debit

Plaintiff does not respond to this argument. *See generally* Dkt. 66 at 3-9. This is Plaintiff's second effective concession—that even if the ACH Agreements' reference to "On Us Entries" includes non-ACH transactions (and again, it does not), AMB did not breach the "On Us Entries" provisions of the ACH Agreements because the portion of the ACH Agreements discussing "On Us Entries" says nothing about any sort of risk management program.

Plaintiff's circuitous theory seems to be that even if the ACH Agreements do not explicitly require AMB to include "On Us Entries" in a risk management program, "the Complaint plausibly alleges that all types of transactions listed in the ACH Agreement are covered by NACHA rules" and "[a]s a result, AMB was required to consider ACH and non-ACH transactions as part of its risk management program." Dkt. 66 at 6 (citing Dkt. 50 at ¶¶ 333-40). But as AMB demonstrated in its motion, "Plaintiff points to no provision of the NACHA Rules that would require non-ACH 'On Us' transactions to be a part of a risk management program; to the contrary, the Complaint specifically alleges that Rules 1.2.4 and 2.2.3 apply only to 'ACH activities.'" Dkt. 56 at 9 (quoting Dkt. 50 at ¶ 337; citing Dkt. 50 at ¶ 338). Plaintiff does not respond to this argument either, other than with the conclusory sentence quoted above, which is directly contradicted by the allegations in Plaintiff's own complaint. *See* Dkt. 50 at ¶¶ 337-38 (NACHA Rules 1.2.4 and 2.2.3 only apply to "ACH activities"). This is Plaintiff's third effective concession—that the NACHA Rules in fact only require *ACH* transactions to be part of any risk management program.

In short, it is undisputed that: (1) the transactions underlying Plaintiff's claim that AMB breached the ACH Agreements are non-ACH transactions; (2) even if the term "On Us Entries" includes non-ACH transactions (which it does not), AMB is not alleged to have breached the portion of the ACH Agreements that refers to "On Us Entries" because it says nothing about a risk

---

Entry, or Non-Monetary Entry to the Receiver's account at the RDFI." Simply put, everything in the ACH Agreements relates to ACH transactions and *only* ACH transactions.

management program; and (3) the NACHA Rules do not require non-ACH "On Us" transactions to be a part of a risk management program. For these reasons, even assuming that AMB did not include the Govoni transactions at issue in a "proper" risk management program, it is *still* effectively undisputed that AMB did not violate the ACH Agreements. Accordingly, the Court should dismiss Plaintiff's claim that AMB violated the ACH Agreements' provisions relating to the NACHA Rules and "On Us Entries."

But if there is any doubt, Plaintiff makes one more effective concession that confirms that his claim that AMB breached the ACH Agreements by violating the NACHA Rules fails. AMB argued in its motion that "even assuming that the NACHA Rules apply to this case, Plaintiff fails to plausibly allege that AMB violated those rules …. Plaintiff never identifies any specific aspects of the Bank's risk management programs that were not 'proper' and never explains how a different risk management plan would have enabled AMB to uncover the Center's fraudulent scheme." Dkt. 56 at 7. Plaintiff does not respond to this argument either. Thus, Plaintiff effectively admits that even if AMB were contractually obligated to follow the NACHA Rules with respect to the transactions at issue (again, it was not), he has not plausibly alleged that AMB violated those rules.

**B. The ACH Agreements do not allow Plaintiff to sue AMB for breach of contract based on AMB's alleged gross negligence.**

As AMB explained in its motion, although Plaintiff claims that he can sue AMB for breach of the ACH Agreements based on AMB's alleged gross negligence, "acting with gross negligence or willful misconduct is *not* a breach of the ACH Agreements." Dkt. 56 at 9. The provision that Plaintiff is relying on for this argument, Section 27 of the ACH Agreements, "is *not* a contractual promise by AMB not to commit gross negligence. Rather, it comes from the 'Limitation of Liability' section of the ACH Agreements, and it is a promise *by the Center* not to sue AMB for anything other than gross negligence or willful misconduct." *Id.* at 10.

As with so many of AMB's other arguments, Plaintiff more or less ignores this argument in his response. Plaintiff merely quotes Section 27 at length and then asserts that "the Trustee has alleged sufficient facts to state a claim for breach of the ACH Agreement due to the Bank's grossly negligent, if not willful violation of the NACHA Rules." Dkt. 66 at 8-9. Plaintiff conspicuously fails to respond to AMB's arguments that Section 27 functions to limit, rather than increase, AMB's liability and that it is a promise made by the Center to AMB, not by AMB to the Center.

Ultimately, as AMB explained in its motion, the language of the contract speaks for itself. Gross negligence does not provide an independent contractual basis for suit. Instead, it only allows Plaintiff to sue for some other breach of the ACH Agreements. Dkt. 56 at 9-10.

Indeed, Plaintiff's theory might be that AMB's supposed gross negligence is relevant not because it is an independent breach of contract but rather because the limitation of liability clause means that he can only sue AMB if he proves that AMB breached the ACH Agreements in a grossly negligent manner. *See* Dkt. 66 at 8-9 (referring to "the Bank's grossly negligent, if not willful violation of the NACHA Rules"). If this is his theory, then he is correct as a matter of contract interpretation; the problem is rather that he has not plausibly alleged that AMB breached the ACH Agreements at all, let alone with gross negligence, for the reasons explained above (and also below). Either way, Plaintiff's gross negligence-based contract claim should be dismissed.

**C. Plaintiff cannot sue AMB at all for a breach of the NACHA Rules.**

Plaintiff's contract claim fails for another reason: as AMB explained in its motion, Plaintiff cannot sue AMB for breach of contract based on an alleged violation of the NACHA Rules because the ACH Agreements only bind the Center to the NACHA Rules, not AMB. Dkt. 56 at 4.

To be sure, the Court need not consider this argument at all before granting AMB's motion to dismiss; Plaintiff has effectively conceded that AMB did not violate the NACHA Rules with respect to the transactions at issue. However, if the Court wishes to consider the issue, Plaintiff's

argument that the ACH Agreements bind AMB to the NACHA Rules also fails. Plaintiff claims that "[t]he very purpose of the ACH Agreement evidences a clear intent by the Bank to incorporate the NACHA Rules and be bound by them." Dkt. 66 at 3-4. But Plaintiff cannot avoid the Agreements' plain text: "***Customer*** agrees to comply with and be subject to the Rules of NACHA." Dkt. 56 at 4 (quoting Dkt. 50-9 at 2). The ACH Agreements plainly only bind the Center to the NACHA Rules, not AMB as well. Of course, an undertaking can be mutual, as demonstrated by *Azure College, Inc. v. Bank of America, N.A.*, where the contract provided that "the *transaction* is subject to the [NACHA] Rules." 629 F. Supp. 3d 1200, 1208 (S.D. Fla. 2022) (emphasis added). There, both parties to the transaction were bound by the Rules under the plain language of the agreement. But here, Plaintiff cannot cite any comparable language in the ACH Agreements.

Tacitly admitting as much, Plaintiff argues that the reason that "the NACHA reference facially spoke to the customer only" is "because the bank is already bound." Dkt. 66 at 4; *see also id.* at 3 (citing "Annual ACH Training for ACH Originators" exhibit); *id.* at 4 & n.6 (arguing that AMB "had already agreed to be bound" because it was an ODFI). But the legally relevant question is not whether AMB is bound to the NACHA rules; it is whether *Plaintiff* can sue AMB for a violation of those Rules. Quite simply, he cannot—the contract does not allow him to do so, and the Rules themselves do not create a cause of action. *See* Dkt. 66 at 7; *see also* Dkt. 56 at 4.

In short, Plaintiff cannot sue AMB for breach of the ACH Agreements based on a violation of the NACHA Rules. On this basis, too, his contract claim can be dismissed.

**II. The Court should dismiss Plaintiff's avoidance claim to the extent that Plaintiff seeks to avoid transactions beyond four years.**

AMB argued in its motion to dismiss that "Plaintiff's avoidance claim should be dismissed to the extent that Plaintiff seeks to avoid transactions beyond four years" because "the IRS's operative proof of claim is still $0." Dkt. 56 at 2-3.

Plaintiff responds that "case law provides the Trustee may utilize the IRS as a triggering creditor, notwithstanding the amount listed in the IRS's proof of claim, because in this specific case, the IRS filed a proof of claim *subject to modification*." Dkt. 66 at 9 (emphasis in original). But the case Plaintiff cites in support of this argument says no such thing.

In *In re Polichuk*, "the Trustee's invocation of the IRS' enhanced statute of limitations [was] based on her factual assertion that the Debtor is liable for additional federal income taxes for tax years 2000, 2002 and 2003." 506 B.R. 405, 428 (Bankr. E.D. Pa. 2014). Although the IRS had not yet assessed tax for those years, the Trustee "presented competent evidence that …. for tax years 2000–2003, the Debtor had additional tax liabilities of nearly $250,000.00 from unreported non-dividend distributions and improperly recognized loss deductions." *Id.* at 429-30.

Here, Plaintiff has not plausibly alleged that the Center underpaid its taxes for any specific tax years. Instead, Plaintiff only vaguely asserted that "[t]he IRS *may* also have additional claims, or *possibly* amended amounts due from prior years as a result of the now discovered nature of Govoni's actions upon the Center's income and investments." Dkt. 50 at ¶ 295 (emphases added). Of course, an allegation that the Center "may" "possibly" have additional tax liability will not do. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("The plausibility standard … asks for more than a sheer possibility.'"). Because Plaintiff has only alleged a sheer possibility that the Center might owe more taxes, *Polichuk* is readily distinguishable. Plaintiff's bare assertion that the IRS is a triggering creditor is insufficient to state an avoidance claim.[3]

## CONCLUSION

The Court should grant AMB's motion to dismiss.

[3] If the Center actually did owe additional taxes, Plaintiff would know and could affirmatively allege as much—after all, Plaintiff stands in the shoes of the Center, has access to all of the Center's records, and has spent more than $1 million on forensic accountants. *See* Dkt. 56 at 5.

Respectfully submitted on September 8, 2026.

By: */s/ Marcos Rosales*
Marcos Rosales
TX Bar No. 24074979
(Admitted *Pro Hac Vice*)
mrosales@beckredden.com
Eric B. Williams II
TX Bar No. 24131767
(Admitted *Pro Hac Vice*)
ewilliams@beckredden.com
**BECK REDDEN LLP**
1221 McKinney, Suite 4500
Houston, TX 77010-2010
Telephone: (713) 951-3700
Facsimile: (713) 951-3720

Donald R. Kirk
FL Bar No. 105767
dkirk@carltonfields.com
Ryan Yant
FL Bar No. 104849
ryant@carltonfields.com
**CARLTON FIELDS, PA**
4221 W Boy Scout Boulevard, Suite 1000
Tampa, FL 33607
Telephone: (813) 229-4334
Facsimile: (813) 229-4133

***Counsel for Defendant***
***American Momentum Bank***

## CERTIFICATE OF SERVICE

I hereby certify that on September 8, 2026, I electronically filed a true and correct copy of the foregoing with the United States Bankruptcy Court for the Middle District of Florida using the Court's CM/ECF system, thereby serving all registered users in this case.

/s/ *Marcos Rosales*
Marcos Rosales