**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

In re: Case No. 8-24-bk-00676-RCT

THE CENTER FOR SPECIAL NEEDS TRUST ADMINISTRATION, INC., Chapter 11

Debtor.

---

Michael Goldberg, Chapter 11 Trustee Adversary Pro. No. 8:26-ap-00015-RCT

Plaintiffs,

v.

AMERICAN MOMENTUM BANK,

Defendant.

______________________________________/

**THE PLAINTIFFS' RESPONSE IN OPPOSITION TO THE DEFENDANT'S MOTION FOR RECONSIDERATION OF ORDER GRANTING IN PART PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

The Court made no mistake when it compelled production of the Bank's personnel files. The Bank's Motion rests on the false premise that, in compelling production of compensation information, the Court granted relief beyond what the Plaintiffs asked for. That is not so. From the outset, the Plaintiffs sought personnel records—including compensation information—of Bank employees involved with the Center and Govoni-related entities. The Plaintiffs also formally requested that information when they served their Fifth Request for Production back in May, which sought "[t]he Bank's compensation plans …sufficient to identify how employee compensation was calculated [.]" The Bank knew the Plaintiffs requested as much: at the August 7 hearing, the Bank explicitly asked the Court to clarify whether the Bank must produce custodian-deponent

compensation information. The Bank's Motion again concedes as much. The August 11 Order thus neither created a new discovery request nor exceeded the dispute before the Court. It resolved the issue the parties presented in an efficient manner.[1] Because reconsideration is extraordinary relief, not a vehicle to relitigate the same issue—for the third time—the Court should deny the Bank's Motion.

## BACKGROUND

In December 2025, the Class Plaintiffs served[2] their First Requests for Production seeking, among other things, personnel files for relevant employees. *See* **Exhibit A**, First RFP. Requests 22, 23, and 24 requested personnel files for three specific employees: Sherry Lilly, Karen Jones, and Sandy Green. A separate request sought:

> Employee records of employees who had any involvement with the Center, Govoni, Gregory, Belisle, Staunton, Witeck, Janicki, LJ, or any Govoni Business Entity. Such employee records may be limited to include:
>
> a. job descriptions;
>
> b. records of professional licenses, certifications, or examinations;
>
> c. employee handbooks and training materials;
>
> d. performance evaluations or reviews that address work performed in connection with the Relevant Accounts, business relationships with the Center, Govoni, Gregory, Belisle, Staunton, Witeck, Janicki, LJ, or any Govoni Business Entity or Class Plaintiffs, or any matters involving allegations of professional misconduct, violations of law, regulations, or Your policies and procedures relating to suspicious activity identification, monitoring, and reporting; and
>
> e. any termination or severance agreements.

*Id.*[3] Request No. 15. The Bank objected to all four requests uniformly. *See* **Exhibit B**, Responses and Objections Nos. 15, 24–26.

[1] See Federal Rule of Bankruptcy Procedure 1001.
[2] The discovery served response is filed based upon the Agreed Order for Joint Discovery Protocol. (Doc. 35).
[3] The Plaintiffs recognize an error in their numbering of the Requests. From here on out, this Response will use the correct numbers reflected in the Bank's Responses and Objections.

From January through July 2026, the parties conferred several times about the Requests and Objections. During those conferrals, the Plaintiffs repeatedly asked the Bank to produce the personnel files of each relevant employee and later, each custodian-deponent. The Plaintiffs made clear that their requests encompassed compensation information. While the parties reached an impasse and the Plaintiffs moved to compel production under the requests relating to three specific employees (Jones, Green, and Lilly), the Bank conceded that it would not reassert any objections overruled by the Court with respect to the broader request for files relating to other employees.

Separately, on May 28, 2026, the Plaintiffs served their Fifth Request for Production on the Bank, seeking the compensation plans of all employees:

> The Bank's compensation plans, or any comparable documents sufficient to identify how employee compensation was calculated or tied to customer relationships, accounts, deposits, loans, or account balances, for the period from January 1, 2009, through December 31, 2024, inclusive.

*See* **Exhibit C**, Request No. 2.

On June 15, 2026, the Plaintiffs filed their first Motion to Compel (Doc. 37) seeking, in part, Lilly, Jones, and Green's personnel files. Mot. (Doc. 37). Included within the request for personnel files were compensation records. Mot. (Doc. 37) at 5–6. The Motion made clear that "The Plaintiffs will seek, consistent with the Court's ruling on this Motion, the personnel files for any employees who handled the Center or Govoni accounts and whom the Plaintiffs intend to depose." Mot. (Doc. 37) at 5, n.6. In response, the Bank argued that compensation structure, bonuses, and incentive information are not relevant and should not be compelled by the Court. *See* Rsp. (Doc. 40) at 2–6. The Court ultimately compelled the Bank to produce the personnel files for the three employees, including the employees' bonus and compensation structure. *See* Order (Doc. 43).

Shortly thereafter, the Plaintiffs requested an update on the Bank's production of the additional custodian-deponents' personnel files. The Bank reversed on its earlier representation that it would not revive objections that were overruled on the first Motion to Compel. Instead, the Bank said that, absent a court order, it will not produce any employee records beyond training documents or policy acknowledgements, and a portion of the compensation of a select few bank employees in addition to Green, Jones, and Lilly.

On July 28, 2026, the Plaintiffs filed their second Motion to Compel (Doc. 54), seeking a "second order compelling production of custodians' and deponents' personnel files—based on the same law and similar facts as the motion this Court granted last month." Mot. (Doc. 54) at 2. The Second Motion argued that "Courts routinely compel production of personnel files for employees …includ[ing] documents relating to incentives, bonuses, quotas …documents related to or concerning job description, [and] salary," Mot. (Doc. 54) at 6; and that because "[t]his Court already determined as much in granting the Plaintiffs' previous motion …[i]t should reach the same conclusion now." *Id.* In other words, the second Motion to Compel sought the same ruling the Court made in its previous Order, applicable to the additional custodian-deponents cited in the second Motion to Compel.

On August 7, 2026, the Court held a hearing on the Second Motion. *See* **Exhibit D**, August 7, 2026, Hearing Transcripts. The Plaintiffs argued that their second Motion to Compel requests the "same type of documents" as the previous Motion to Compel. *Id.* at 24:1–15. In response to the Plaintiffs' argument, the Bank stated: "it sounds like compensation is now off the table. And that was on the table before. And so I think I would like clarification on that, can we eliminate compensation." *Id.* at 45:22–24. The Bank then conceded, however, that "the Plaintiffs have requested documents relating to compensation plans." *Id.* at 46:2–3. The Court responded: "I don't

think compensation was eliminated, at least in my order." *Id.* at 46:21–24. To remove any doubt, the Bank requested that the Court's order "really should be what exactly in [the personnel files] do we need to produce." *Id.* at 47:12–13. That is exactly what the Court did. The Court's Order listed the exact categories of documents that the Bank must produce—"information about the Custodian-Deponent's compensation (including any bonuses, incentive payments, or non-monetary rewards or perks)." Order (Doc. 60) at 2. Despite giving the Bank exactly what it asked—an itemized list of the precise items the Bank must produce—the Bank has now moved for reconsideration, arguing that the Court made a "mistake" by including compensation information in its Order. Mot. (Doc. 67).

## ARGUMENT

Federal Rule of Bankruptcy Procedure 1001 provides that the bankruptcy rules and forms must be "construed, administered, and employed by both the Court and the parties to secure the just, speedy, and inexpensive determination of every case and proceeding." Reconsideration of an order addressing this compensation dispute the parties have been discussing for months, and which the Court has determined is important after hearing specific argument on this topic (See Doc. 60) is inefficient and wasteful. Reconsideration should be denied on this reason alone.

The Bank also is not entitled to reconsideration, "an extraordinary remedy that must be used sparingly," for the reasons set forth below. *S. Coast K9, LLC v. Heiser*, 2025 WL 3623716, at *2 (M.D. Fla. Dec. 15, 2025). While courts have "plenary authority to reconsider, revise, alter or amend a non-final order[,]" *Hornady v. Outokumpu Stainless USA, LLC*, 118 F.4th 1367, 1379–80 (11th Cir. 2024), that authority does not invite a dissatisfied litigant to relitigate matters already decided, *see Harb v. Westlake Services LLC*, 2026 WL 1700123, at *2 (M.D. Fla. June 11, 2026).

Here, the Bank is attempting to relitigate a matter that this Court has already heard twice and resolved twice. That is not a basis for reconsideration.

## I. No Extraordinary Circumstances Warrant Reconsideration: The Court's Order Properly Compelled Production of Relevant and Discoverable Information.

"There are three major grounds that justify reconsideration: (1) an intervening change in controlling law; (2) newly discovered evidence; and (3) the need to correct clear error or prevent manifest injustice." *In re KnowBe4, Inc. Sec. Litig.*, 2026 WL 1965931, at *1 (S.D. Fla. Mar. 19, 2026); *see also S. Coast K9,* 2025 WL 3623716 at *2 (same). The moving party's burden to justify reconsideration is "heavy." *Branch Banking & Tr. Co. v. Shirley Inv. Properties, LLC*, 2014 WL 12623802, at *1 (M.D. Fla. Jan. 16, 2014).

The Bank has not carried its heavy burden. The Bank identifies neither an intervening change in controlling law nor newly discovered evidence. Its Motion therefore depends solely on clear error or manifest injustice, but it establishes neither.

"To be clearly erroneous, a decision must strike us as more than just maybe or probably wrong; it must, as one member of this court recently stated during oral argument, strike us as wrong with the force of a five-week-old, unrefrigerated dead fish." *Howzell v. Saul*, 2020 WL 5077029, at *1 (S.D. Fla. Aug. 27, 2020). Similarly, "manifest injustice occurs where the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Seacoast Constr., Inc. v. JPMorgan Chase Bank, N.A.*, 2020 WL 9600108, at *3 (S.D. Fla. Aug. 13, 2020).

The Bank's Motion rests on a single argument: that the Court made a decision outside the adversarial issues presented by ordering the Bank to produce the custodian-deponents' compensation information. The Bank is wrong for two reasons. First, as the Bank describes in its own telling, "American Momentum Bank…likely bears the blame." Mot. (Doc. 67) at 3. It was

the Bank who asked the Court for clarification during the hearing regarding whether the Bank must produce compensation information. **Exhibit D** at 45:22–24. The Bank likewise requested that the Court's order "be what exactly in [employees' personnel files] we need to produce." *Id.* at 47:12–13. The Court's Order did just that and the Court was justified in doing so, just like other courts who compelled the production of documents, even when the issue was raised for the first time during a discovery hearing. *See Kratiuk v. Trans Union LLC*, 2026 WL 759128, at *1 (S.D. Fla. Mar. 18, 2026) (compelling document production notwithstanding the issue being raised for the first time at the discovery hearing).

Second, while the Bank says that compensation fell outside of the Plaintiffs' requests, the Plaintiffs *had* served Requests for Production on the Bank seeking compensation plans:

> The Bank's compensation plans, or any comparable documents sufficient to identify how employee compensation was calculated or tied to customer relationships, accounts, deposits, loans, or account balances, for the period from January 1, 2009, through December 31, 2024, inclusive.

**Exhibit C** Request No. 2. The Bank's argument that "documents pertaining to [Custodian-Deponent] compensation were *not* requested by Plaintiffs" is, therefore, flatly wrong. The Plaintiffs requested all of the information that the Court compelled; the information is all relevant and discoverable; and the Bank's bid to delay should not be rewarded.

## II. The Bank's Attempt to Force the Plaintiffs to File and Litigate an Additional, Redundant Motion Would Needlessly Waste Time, Money, and Judicial Resources.

Even if the Bank were correct that compensation information was not sought—untrue—the outcome would not change. Courts typically do not require parties to serve unnecessary discovery. *See Henry v. Komarovsky*, 2023 WL 7474842, at *5 (W.D. Wash. Sept. 27, 2023) ("Requiring Mr. Henry to submit a new request for production under these circumstances would be needlessly formalistic" after "he has now clarified [] the additional policies he is seeking, and

those policies are reasonably within the scope of his original request as well as the scope of discovery"). If this Court were to second guess its previous Order, the Plaintiffs would then move to compel Request No. 2 of the Plaintiffs' Fifth Request for Production (seeking compensation information) or serve an additional Request for Production reiterating the explicit request for this data and then move to compel after the Bank's inevitable objection. Either path would spawn a new wave of motion practice and would ultimately delay the case and the recovery for the thousands of victims of Govoni's scheme. This Court has already heard argument on the relevant issues, twice over, and has resolved the issues in the Plaintiffs' favor both times. *Nobody* benefits from a third venture into the same waters.

For these reasons, the Court should deny the Bank's Motion for Reconsideration.

WHEREFORE, the Plaintiffs respectfully request that this Court deny the Bank's Motion for Reconsideration of Order Granting in Part Plaintiffs' Motion to Compel Production of Documents.

Respectfully submitted on September 14, 2026.

Respectfully submitted,

/s/*Megan W. Murray*

Megan W. Murray
Florida Bar Number 0093922
Scott A. Underwood
Florida Bar Number 730041
Adam Gilbert
Florida Bar Number 1011637
UNDERWOOD MURRAY, P.A.
100 N Tampa Street, Suite 2325
Tampa, Florida 33602
Tel: (813) 540-8401 | Fax: (813) 4553-5345
Email: mmurray@underwoodmurray.com
sunderwood@underwoodmurray.com
agilbert@underwoodmurray.com

*Special Counsel to the Chp. 11 Trustee*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and accurate copy of the foregoing, that was filed with the Clerk of Court, has been furnished electronically to those parties registered to receive service via CM/ECF on September 14, 2026.

/s/ Megan W. Murray
Megan W. Murray
FBN: 0093922